IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2014 Term

FILED

October 23, 2014

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

_____

No. 13-0180

_____

LAWYER DISCIPLINARY BOARD,
Petitioner

v.

STEPHEN L. HALL,
A MEMBER OF THE WEST VIRGINIA STATE BAR,
Respondent

_____

Lawyer Disciplinary Proceeding

LAW LICENSE SUSPENDED AND OTHER SANCTIONS

_____

Submitted: September 3, 2014
Filed: October 23, 2014

Renée N. Frymyer, Esq.                Stephen L. Hall, Esq., *Pro Se*
Office of Disciplinary Counsel        Huntington, West Virginia
Charleston, West Virginia
Attorney for the Petitioner

The Opinion of the Court was delivered by JUSTICE WORKMAN.

1. "A *de novo* standard applies to a review of the adjudicatory record made before the Committee on Legal Ethics of the West Virginia State Bar [currently, the Hearing Panel Subcommittee of the Lawyer Disciplinary Board] as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the Committee's recommendations while ultimately exercising its own independent judgment. On the other hand, substantial deference is given to the Committee's findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record." Syl. Pt. 3, *Comm. on Legal Ethics v. McCorkle*, 192 W.Va. 286, 452 S.E.2d 377 (1994).

2. "This Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions or annulments of attorneys' licenses to practice law." Syl. Pt. 3, *Comm. on Legal Ethics v. Blair*, 174 W.Va. 494, 327 S.E.2d 671 (1984), *cert denied*, 470 U.S. 1028 (1985).

3. Administrative law judges are adjudicatory officers within the meaning of Rule 8.2(a) of the West Virginia Rules of Professional Conduct.

4. "The Free Speech Clause of the First Amendment protects a lawyer's

criticism of the legal system and its judges, but this protection is not absolute. A lawyer's speech that presents a serious and imminent threat to the fairness and integrity of the judicial system is not protected. When a personal attack is made upon a judge or other court official, such speech is not protected if it consists of knowingly false statements or false statements made with a reckless disregard of the truth. Finally, statements that are outside of any community concern, and are merely designed to ridicule or exhibit contumacy toward the legal system, may not enjoy First Amendment protection." Syl. Pt. 1, *Comm. on Legal Ethics v. Douglas*, 179 W.Va. 490, 370 S.E.2d 325 (1988).

5. Within the context of assessing an alleged violation of Rule 8.2(a) of the West Virginia Rules of Professional Conduct, a statement by an attorney that such attorney knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge, adjudicatory officer or public legal officer, or of a candidate for election or appointment to judicial or legal office is not protected by the First Amendment as public speech on a matter of public concern where such statement is not supported by an objectively reasonable factual basis. The State's interest in protecting the public, the administration of justice, and the legal profession supports use of the objectively reasonable standard in attorney discipline proceedings involving disparagement of the credibility of the aforementioned judicial officers.

ii

6. "In deciding on the appropriate disciplinary action for ethical violations, this Court must consider not only what steps would appropriately punish the respondent attorney, but also whether the discipline imposed is adequate to serve as an effective deterrent to other members of the Bar and at the same time restore public confidence in the ethical standard of the legal profession." Syl. Pt. 3, *Comm. on Legal Ethics v. Walker*, 178 W.Va. 150, 358 S.E.2d 234 (1987).

7. "Rule 3.16 of the West Virginia Rules of Lawyer Disciplinary Procedure enumerates factors to be considered in imposing sanctions and provides as follows: 'In imposing a sanction after a finding of lawyer misconduct, unless otherwise provided in these rules, the Court [West Virginia Supreme Court of Appeals] or Board [Lawyer Disciplinary Board] shall consider the following factors: (1) whether the lawyer has violated a duty owed to a client, to the public, to the legal system, or to the profession; (2) whether the lawyer acted intentionally, knowingly, or negligently; (3) the amount of the actual or potential injury caused by the lawyer's misconduct; and (4) the existence of any aggravating or mitigating factors." Syl. Pt. 4, *Office of Lawyer Disciplinary Counsel v. Jordan*, 204 W.Va. 495, 513 S.E.2d 722 (1998).

8. "Aggravating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify an increase in the degree of discipline to be

imposed." Syl. Pt. 4, *Lawyer Disciplinary Bd. v. Scott*, 213 W.Va. 209, 579 S.E.2d 550 (2003).

9. "Mitigating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify a reduction in the degree of discipline to be imposed." Syl. Pt. 2, *Lawyer Disciplinary Bd. v. Scott*, 213 W.Va. 209, 579 S.E.2d 550 (2003).

10. "Mitigating factors which may be considered in determining the appropriate sanction to be imposed against a lawyer for violating the Rules of Professional Conduct include: (1) absence of a prior disciplinary record; (2) absence of a dishonest or selfish motive; (3) personal or emotional problems; (4) timely good faith effort to make restitution or to rectify consequences of misconduct; (5) full and free disclosure to disciplinary board or cooperative attitude toward proceedings; (6) inexperience in the practice of law; (7) character or reputation; (8) physical or mental disability or impairment; (9) delay in disciplinary proceedings; (10) interim rehabilitation; (11) imposition of other penalties or sanctions; (12) remorse; and (13) remoteness of prior offenses." Syl. Pt. 3, *Lawyer Disciplinary Bd. v. Scott*, 213 W.Va. 209, 579 S.E.2d 550 (2003).

WORKMAN, Justice:

This is a lawyer disciplinary proceeding brought against Stephen L. Hall (hereinafter "Mr. Hall") by the Office of Disciplinary Counsel (hereinafter "the ODC") on behalf of the Lawyer Disciplinary Board (hereinafter "the Board"). A Hearing Panel Subcommittee of the Board (hereinafter "HPS") determined that Mr. Hall violated Rules 8.2(a) and 8.4(d) of the West Virginia Rules of Professional Conduct. The Board has recommended a three-month suspension of Mr. Hall's license to practice law, a requirement of three additional hours of continuing legal education, and the payment of costs.

Upon thorough review of the record, briefs, and applicable precedent, this Court finds that clear and convincing evidence exists to support the Board's findings and recommended sanctions. This Court therefore imposes the sanctions recommended by the Board.

I. Factual and Procedural History

Mr. Hall was admitted to The West Virginia State Bar on November 20, 1996. He serves as the financial aid officer for the Charleston Academy of Beauty Culture (hereinafter "CABC") and does not regularly practice law. Ms. Tyleemah Edwards and Mr. Harry Walter Robinson filed complaints with the West Virginia Human Rights Commission

1

(hereinafter "WVHRC") asserting that the CABC, Judy Hall, and Cherie Bishop had discriminated against them on the basis of race. The CABC is owned and operated by Mr. Hall's mother, Judy Hall. Mr. Hall represented the CABC, Judy Hall, and Cherie Bishop[1] in the proceedings before the WVHRC.

The complainants in the underlying matter, Ms. Edwards and Mr. Robinson, were African-American students of the CABC.[2] In their complaints before the WVHRC, they alleged racial discrimination, a racially hostile environment, and segregation. Ms. Edwards also alleged reprisal and retaliation, allegedly occurring after she had complained about racial discrimination. Their cases were consolidated for hearing before the WVHRC.

The Honorable Phyllis H. Carter (hereinafter "ALJ Carter") served as Chief Administrative Law Judge during the proceedings at issue before the WVHRC. ALJ Carter held a public hearing from April 23 to 26, 2007, and issued a Final Decision on May 29, 2009, finding by a preponderance of evidence that the CABC, Judy Hall, and Cherie Bishop had illegally discriminated against the complainants on the basis of their race. The 109-page decision included extensive citations to exhibits and the hearing transcript.

---

[1]Cherie Bishop was an instructor at the CABC.

[2]Mr. Robinson is now deceased.

On June 29, 2009, Mr. Hall filed a Petition of Appeal with the WVHRC on behalf of his clients, the CABC, Judy Hall, and Cherie Bishop.[3]  A significant portion of the appellate brief was devoted to ALJ Carter's alleged racial bias and predisposition toward the complainants' position, based upon the fact that ALJ Carter was also an African American.[4]  Specifically, the Petition of Appeal contained the following statements:[5]

> Phyllis H. Carter failed to execute her duties as ALJ for the HRC in a fair an (sic) impartial manner by, and in direct conflict with the Code of Judicial Conduct, exhibiting clear bias and having personal knowledge of the matters appearing before her; refusing to disclose the same; and ruling against that which she personally knew to be false.
>
> The ALJ based her Decision upon a large number of misstated and judicially fabricated facts, as well as misrepresenting and lying about the history of the case and the issues involved in the case, in direct violation of the case law precedent of the Supreme Court of Appeals of the State of West Virginia.
>
> On May 29th, 2009, Phyllis H. Carter, the ALJ in the present cases, did unlawfully purport to exercise the function of a public official, employee and tribunal without legal authority to do so and with the intent to induce the Respondents to submit to the

---

[3]According to the record, the underlying matter was Mr. Hall's first and only experience practicing law before ALJ Carter.  ALJ Carter is now deceased.

[4]One of Mr. Hall's primary contentions was that ALJ Carter knew the allegations of CABC's discriminatory practice of steering white students to white customers and black students to black customers were false because she had personally visited the CABC and had received services from a white student.  This Court observes that Mr. Hall could have filed a motion to recuse, pursuant to West Virginia 77 C.S.R. 2-7.4.b, if he had believed this issue to constitute bias on the part of ALJ Carter.

[5]These statements are excerpts from the 122-page and 124-page petitions filed by Mr. Hall with the WVHRC and in the Kanawha County Circuit Court.

3

fraudulent authority of Phyllis H. Carter. . . . Phyllis H. Carter impersonated a public official, a clear criminal violation of W.Va. Code §61-5-27a(e). Phyllis H. Carter criminally violated the law when she caused to be filed, recorded and delivered said fraudulent Decision.

The glaring fact that this presents is not merely that Phyllis Carter, (sic) flaunted her disdain for ethical obligations, but that knowing the allegations to be false, openly displayed her bias by deciding against the Respondents personally knowing the allegations to be fraudulent. It is apparent from the context of these proceedings that the explanation for Phyllis H. Carter's unethical behavior can only be that the individual Respondents are white, while Ms. Carter is black. Counsel can think of no other explanation but that Phyllis H. Carter is engaging in the most heinous of racial bigotry against the Respondents.

The ALJ's Decision explicitly relied on this fraudulent incident in finding for the Complainants knowing the incident to be fraudulent. The ALJ refused to follow the Rules of Procedure even-handedly, but showed favoritism towards the AG's [Attorney General's] Office even knowing that the testimony supporting new allegations was fraudulent, and that the AG's Office had participated in perpetrating the fraud.

In the Decision, the ALJ lied and stated that counsel for Respondent would not accept service of process.

In an outlandish display of tyrannical inclination, ALJ Carter found that Respondents discriminated because they were unable to force other companies and trade groups to provide instruction and product knowledge at the Respondents' school. . . . ALJ Carter basing her Decision upon the absence of such an outlandish forced coercion, as she obviously did, indicates not only that ALJ Carter is deluded into thinking that this is a Communist country where companies are forced to perform services for others, but is under the deluded impression that Respondents have the power and authority to compel others to do its bidding. For the foregoing reasons, Respondents recommend that ALJ Carter seek professional psychiatric help,

4

or be required to attend a forced reeducation camp . . . oops . . . wrong country.
The ALJ refers to the child as 'the only non-white party goer.' The child was allegedly, according to Complainant Edwards, mixed. That the ALJ ascribes racist motives to Respondent Bishop and pointedly denies the child's white heritage speaks more of the ALJ's racism than Respondents. (sic)

ALJ Carter relies on her absolute unquestionable power as sole determinant of who is to be given the halo of credibility. Apparently this practice is routine for the HRC, the AG's Office and ALJ Carter as the ubiquitous appearance of the word credible, or variations thereof, attests.

These are plainly stupid reasons for the ALJ to ignore Ms. Davis' testimony, and more reflection upon Phyllis Carter's bias.

Corroboration is only important to ALJ Carter if it favors her predetermined outcome of the case.

Former Chief ALJ Carter states numerous lies and falsehoods in her Decision, which, while not by themselves constituting a legal error, demonstrate the pervasiveness of the ALJ's bias, disdain for the facts and lack of judicial temperament.

This appeal could go on and on concerning the seemingly perpetual lies and misrepresentations by ALJ Carter about the actual evidence in the present cases.

The WVHRC affirmed ALJ Carter's Final Decision and incorporated by reference the factual findings and conclusions of law set forth by ALJ Carter into a Final Order of the agency. Mr. Hall thereafter filed an appeal on behalf of his clients with the Circuit Court of Kanawha County on October 8, 2009. In that appeal, Mr. Hall included the

5

same statements about ALJ Carter that he had made in the prior appeal, as quoted above. On August 8, 2011, the Circuit Court of Kanawha County affirmed the WVHRC decision. This Court affirmed the circuit court on May 25, 2012. *See Charleston Academy of Beauty Culture, Inc. v. West Virginia Human Rights Comm'n,* No. 11-1286, 2012 WL 3129142 (W.Va. May 25, 2012) (Memorandum Decision).

Based on Mr. Hall's statements concerning ALJ Carter in his petitions for appeal, the ODC charged Mr. Hall with violating Rule 8.2(a), 8.4(c), and Rule 8.4(d) of the West Virginia Rules of Professional Conduct. Rule 8.2(a) provides: "A lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth of falsity concerning the qualifications or integrity of a judge, adjudicatory officer or public legal officer, or of a candidate for election or appointment to judicial or legal office." Rule 8.4 provides that "[i]t is professional misconduct for a lawyer to . . . (c) engage in conduct involving dishonesty, fraud, deceit, or misrepresentation; (d) engage in conduct that is prejudicial to the administration of justice." A Statement of Charges was issued against Mr. Hall and filed with this Court on February 26, 2013.[6] Mr. Hall was served with the Statement of Charges on February 27, 2013, and he filed a timely response on March 25, 2013.

---

[6]The Investigative Panel of the Board issued a written admonishment on December 14, 2012. By letter dated December 28, 2012, Mr. Hall objected to the issuance of the admonishment.

A hearing was held by the HPS on September 26, 2013. The HPS heard testimony from ALJ Carter, attorney Paul Sheridan,[7] and Mr. Hall. On March 13, 2014, the HPS issued its decision, and the Report and Recommendation of the HPS was filed with this Court on March 26, 2014. The HPS found clear and convincing evidence that Mr. Hall violated Rules 8.2(a) and 8.4(d) of the West Virginia Rules of Professional Conduct. Specifically, the HPS found that Mr. Hall made statements with reckless disregard as to truth or falsity concerning the integrity of a judicial officer, in violation of Rule 8.2(a) of the Rules of Professional Conduct. Further, the HPS found that Mr. Hall engaged in conduct that is prejudicial to the administration of justice, in violation of Rule 8.4(d).[8]

The HPS recommended that Mr. Hall's law license be suspended for a period of three months; that Mr. Hall be ordered to complete an additional three hours of continuing legal education during the 2014-2016 reporting period, specifically in ethics, over and above that already required; and that Mr. Hall be ordered to reimburse the Board the costs of the proceedings pursuant to Rule 3.15 of the Rules of Lawyer Disciplinary Procedure.

---

[7]Paul Sheridan testified that he served as an assistant attorney general in the civil rights division from 1990 to 2013. He represented the WVHRC in the underlying matter wherein Mr. Hall's clients were adverse parties. According to Mr. Sheridan, ALJ Carter's Final Decision did not contain any lies or misrepresentations.

[8]The HPS did not find that Mr. Hall's statements constituted fraud, dishonesty, deceit or misrepresentation and consequently recommended the dismissal of the charged violation of Rule 8.4(c).

On April 15, 2014, Mr. Hall filed an "Objection made pursuant to Rule 3.11 of the Rules of Lawyer Disciplinary Procedure." By Order entered April 17, 2014, this Court ordered the parties to submit written briefs. Oral argument was heard on September 3, 2014.

## II. Standard of Review

In *Committee on Legal Ethics v. McCorkle*, 192 W.Va. 286, 452 S.E.2d 377 (1994), this Court addressed the applicable standard of review in lawyer disciplinary cases. Syllabus point three of *McCorkle* provides:

> A *de novo* standard applies to a review of the adjudicatory record made before the [Lawyer Disciplinary Board] as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the [Board's] recommendations while ultimately exercising its own independent judgment. On the other hand, substantial deference is given to the [Board's] findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record.

*Id*. at 289, 452 S.E.2d at 380; *see also In re L.E.C.*, 171 W.Va. 670, 672, 301 S.E.2d 627, 629 (1983) (finding that absent mistake of law or arbitrary factual assessment, recommended sanctions in lawyer disciplinary matters are given substantial consideration).

The standard of review enunciated above is consistent with this Court's ultimate authority on issues of legal ethics. Syllabus point three of *Committee on Legal Ethics v. Blair*, 174 W.Va. 494, 327 S.E.2d 671 (1984), provides that "'[t]his Court is the

8

final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions or annulments of attorneys' licenses to practice law." This Court is also mindful that, pursuant to Rule 3.7 of the Rules of Lawyer Disciplinary Procedure, "the allegations of the formal charge must be proved by clear and convincing evidence." With these standards as guidance, we address the issues raised in this matter.

## III. Discussion

### A. Applicability of Rule 8.2(a) to Administrative Law Judges

In response to the Board's recommended sanctions, Mr. Hall contends that ALJ Carter was not an "adjudicatory officer" as contemplated by Rule 8.2(a). The rule, as quoted above, provides that "[a] lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth of falsity concerning the qualifications or integrity of a judge, *adjudicatory officer* or public legal officer, or of a candidate for election or appointment to judicial or legal office." (Emphasis supplied). In analyzing the applicability of that rule to the present situation, the HPS found that ALJ Carter was an "adjudicatory officer" as contemplated by the rule. As the HPS observed, an administrative law judge is authorized by statute to conduct hearings, determine legal and factual questions, and render final decisions within the context of proceedings pursuant to the West Virginia Human Rights Act. *See* W.Va. Code § 5-11-8(d)(3) (2013). The rule does not exclude any particular types of judges or adjudicatory officers, and the comment to the rule specifically references

9

the attorney general, prosecuting attorney, and public defender as examples of legal officials to which the rule applies.

While Mr. Hall contends that Rule 8.2 prohibits false or reckless statements *only* against elected or appointed judicial officers, we find such argument meritless. He presents no legal authority for his assertions, and his perception that only elected or appointed judicial officers are entitled to the protections of Rule 8.2 is unfounded. While there is no direct precedent in this state, other jurisdictions have disciplined attorneys for violations of rules concerning statements made by attorneys about administrative law judges. In *The Florida Bar v. Ray*, 797 So.2d 556 (Fla. 2001), *cert. denied*, 535 U.S. 930 (2002), for instance, an attorney was disciplined for violating Florida Rule of Professional Conduct 4-8.2(a), identical to our Rule 8.2(a), based upon statements made regarding an administrative law judge in the United States Executive Office for Immigration Review. It is undisputed that ALJ Carter possessed explicit authority to adjudicate cases before the WVHRC, and this Court finds that the HPC was correct to hold that ALJ Carter was an adjudicatory officer, as contemplated by Rule 8.2(a). This Court holds that administrative law judges are adjudicatory officers within the meaning of Rule 8.2(a) of the West Virginia Rules of Professional Conduct.

B. Applicability of Rule 8.2 to Statements Made in Legal Writings

10

Mr. Hall also contends that Rule 8.2(a) should not apply to his statements because they were made in the context of a written legal appeal. The HPS rejected this argument, noting that Mr. Hall failed to cite to any authority consistent with his position. The HPS relied upon this Court's holding in *Lawyer Disciplinary Board v. Turgeon*, 210 W.Va. 181, 557 S.E.2d 235 (2000), in which this Court found a violation of Rule 8.2(a) for statements made by an attorney in a motion to recuse. Other jurisdictions have disciplined attorneys for making statements in pleadings impugning the integrity of judges. *See The Florida Bar v. Kleinfeld*, 648 So.2d 698 (Fla. 1994); *In re Cobb*, 838 N.E.2d 1197 (Mass. 2005); *Smith v. Pace*, 313 S.W.3d 124 (Mo. 2010); *Board of Prof. Resp. v. Davidson*, 205 P.3d 1008 (Wyo. 2009). In *Kentucky Bar Association v. Waller*, 929 S.W.2d 181 (Ky. 1996), an attorney was suspended for six months for calling a judge a "lying incompetent a[–]hole" in a document entitled "Legal Authorities Supporting the Motion to Dismiss." *Id*. at 181. The reviewing court stated:

> There can never be a justification for a lawyer to use such scurrilous language with respect to a judge *in pleadings or in open court*. The reason is not that the judge is of such delicate sensibilities as to be unable to withstand the comment, but rather that such language promotes disrespect for the law and for the judicial system.

*Id*. at 183 (emphasis supplied). Based upon the precedent of this Court and other jurisdictions, we find that the HPS correctly concluded that Rule 8.2(a) applies to pleadings filed by lawyers.

C. An Attorney's Freedom of Speech and the Appropriate Standard for Determining Violations of Rule 8.2(a) of the West Virginia Rules of Professional Conduct

Mr. Hall also raises an issue regarding his freedom of speech, contending that the First Amendment to the United States Constitution permits him to express his opinions without fear of sanction through the West Virginia Rules of Professional Conduct. The HPS rejected Mr. Hall's argument that his right to freedom of speech prohibits the imposition of sanctions under Rule 8.2(a). The HPS references this Court's holding in syllabus point one of *Committee on Legal Ethics v. Douglas*, 179 W.Va. 490, 370 S.E.2d 325 (1988), in which this Court explained that although the First Amendment permits criticism of judges, such protection is not absolute.

> The Free Speech Clause of the First Amendment protects a lawyer's criticism of the legal system and its judges, but this protection is not absolute. A lawyer's speech that presents a serious and imminent threat to the fairness and integrity of the judicial system is not protected. When a personal attack is made upon a judge or other court official, such speech is not protected if it consists of knowingly false statements or false statements made with a reckless disregard of the truth. Finally, statements that are outside of any community concern, and are merely designed to ridicule or exhibit contumacy toward the legal system, may not enjoy First Amendment protection.

179 W.Va. at 490-91, 370 S.E.2d at 325-26.

This Court, however, has not previously had the opportunity to consider the appropriate standard for determining whether statements by an attorney regarding a judicial officer enjoy constitutional protection. Recognizing an absence of precedent in this state

12

on the precise standard to be employed, the HPS sought guidance from the methods utilized in other jurisdictions and ultimately applied the standard of whether there is an objectively reasonable factual basis for the statements made by the attorney. The Supreme Judicial Court of Massachusetts engaged in an illuminating discussion of this issue when it addressed the "question of the standard to be applied in disciplinary proceedings where an attorney invokes the First Amendment protection of free speech when defending against charges that he impugned the integrity of a judge, without basis, during a pending case." *Cobb*, 838 N.E.2d at 1211. The *Cobb* court noted that at least three states[9] have held that an actual malice standard, such as that utilized in a defamation action regarding a public official, should be employed in the attorney discipline setting. *Id.; see New York Times Co. v. Sullivan*, 376 U.S. 254, 279-81 (1964) (holding, in defamation context, that First Amendment protects speech regarding a public official unless made with actual malice). The *Cobb* court further explained, however, that a majority of jurisdictions have concluded that the interests sought to be protected by the attorney disciplinary system require a less stringent standard than the actual malice standard. 838 N.E.2d at 1212; *see also Standing Comm. on Discipline v. Yagman*, 55 F.3d 1430, 1437 n.12 (9th Cir. 1995); *Office of Disciplinary Counsel v. Gardner*, 793 N.E.2d 425, 431 (Ohio 2003). The majority of state courts that have considered the issue of appropriate discipline for an attorney criticizing a judge have determined that "the

---

[9]*See Matter of Green*, 11 P.3d 1078, 1084 (Colo. 2000); *Oklahoma Bar Ass'n v. Porter*, 766 P.2d 958, 969 (Okla.1988); *Ramsey v. Board of Prof. Resp.*, 771 S.W.2d 116, 121-22 (Tenn.), *cert. denied*, 493 U.S. 917 (1989).

13

standard is whether the attorney had an objectively reasonable basis for making the statements." *Cobb*, 838 N.E.2d at 1212.[10]

The rationale for employing the objectively reasonable standard rather than the actual malice test of *New York Times* was also persuasively explained by the Minnesota Supreme Court in *In re Disciplinary Action Against Graham*, 453 N.W.2d 313 (Minn.1990). The court stated:

> This court certifies attorneys for practice to protect the public and the administration of justice. That certification implies that the individual admitted to practice law exhibits a sound capacity for judgment. Where an attorney criticizes the bench and bar, the issue is not simply whether the criticized individual has been harmed, but rather whether the criticism impugning the integrity of judge or legal officer adversely affects the administration of justice and adversely reflects on the accuser's capacity for sound judgment. An attorney who makes critical statements regarding

---

[10]*See also U.S. Dist. Court for the E. Dist. of Washington v. Sandlin*, 12 F.3d 961 (9th Cir. 1993) (applied objective standard to attorney disciplinary proceedings, requiring court to determine "what the reasonable attorney, considered in light of all his professional functions, would do in the same or similar circumstances[.]"); *Mississippi Bar v. Lumumba*, 912 So.2d 871 (Miss. 2005) (attorney had no "objectively reasonable factual basis" for making statements impugning judge's integrity and qualifications); *Office of Disciplinary Counsel v. Price*, 732 A.2d 599 (Pa. 1999) (found violation where attorney relied upon rumors, innuendo, and perceptions rather than conducting reasonably diligent inquiry); *In re Disciplinary Proceedings Against Sommers*, 811 N.W.2d 387 (Wis. 2012) (finding violation where record devoid of credible evidence to support attorney's statements regarding judge's credibility). Generally, these cases have involved the application of a rule similar or identical to Rule 8.2 in West Virginia. *See, e.g., Idaho State Bar v. Topp*, 925 P.2d 1113 (Idaho 1996), *cert. denied*, 520 U.S. 1155 (1997); *In re Frerichs*, 238 N.W.2d 764 (Iowa 1976); *In re Westfall*, 808 S.W.2d 829 (Mo.), *cert. denied*, 502 U.S. 1009 (1991); *In re Holtzman*, 577 N.E.2d 30 (NY), *cert. denied*, 502 U.S. 1009 (1991).

14

judges and legal officers with reckless disregard as to their truth or falsity and who brings frivolous actions against members of the bench and bar exhibits a lack of judgment that conflicts with his or her position as "an officer of the legal system and a public citizen having special responsibility for the quality of justice." . . . .

Because of the interest in protecting the public, the administration of justice and the profession, a purely subjective standard is inappropriate. The standard applied must reflect that level of competence, of sense of responsibility to the legal system, of understanding of legal rights and of legal procedures to be used only for legitimate purposes and not to harass or intimidate others, that is essential to the character of an attorney practicing in Minnesota. Thus, we hold that the standard must be an objective one dependent on what the reasonable attorney, considered in light of all his professional functions, would do in the same or similar circumstances.

*Id.* at N.W.2d at 322 (quoting Minn. R. Prof'l Conduct, Preamble).

This majority approach was also succinctly articulated in *In re Terry*, 394 N.E.2d 94 (Ind. 1979), *cert. denied sub nom. Terry v. Indiana Supreme Court Disciplinary Comm'n*, 444 U.S. 1077 (1980), as follows:

The Respondent is charged with professional misconduct, not defamation. The societal interests protected by these two bodies of law are not identical. Defamation is a wrong directed against an individual and the remedy is a personal redress of this wrong. On the other hand, the Code of Professional Responsibility encompasses a much broader spectrum of protection. Professional misconduct, although it may directly affect an individual, is not punished for the benefit of the affected person; the wrong is against society as a whole, the preservation of a fair, impartial judicial system, and the system of justice as it has evolved for generations. . . . Unwarranted public suggestion by

15

an attorney that a judicial officer is motivated by criminal purposes and considerations does nothing but weaken and erode the public's confidence in an impartial adjudicatory process.

394 N.E.2d at 95-96.

As the *Cobb* court accurately perceived, judges are not immune from criticism, and an attorney's rights to freedom of speech are not eviscerated by rules of professional conduct such as Rule 8.2(a). 838 N.E.2d at 1214. An attorney "may make statements critical of a judge . . . [and] may even be mistaken. What is required by the rules of professional conduct is that he have a reasonable factual basis for making such statements before he makes them." *Id*. While this requirement may arguably "be inconsistent with the manner in which one generally may engage in free and public debate in our society, . . . it is essential to the orderly and judicious presentation of cases in a court room." *Id*.

Decisions made in the forum of public debate, unlike those made in the court room, are not constrained by principles of due process and the rule of law, or by the application of logic and common sense to objective facts dispassionately determined from competent and relevant evidence. When an attorney speaks in a court room, he is not seeking political converts whose vote properly may be cast without regard to motive or basis. Rather, he seeks to persuade an impartial judicial officer to direct the force of government against a particular third person. If the judicial system is to operate fairly, rationally, and impartially, as it must, and if the administration of justice is to proceed in an orderly manner, judges and attorneys alike must act with responsibility toward these principles. Attorneys must conduct themselves conformably with the legal and ethical requirements that their factual assertions in the court room that are critical of judges have an objective basis.

16

*Id*. The *Cobb* court identified the significant State interests of "protecting the public, the administration of justice, and the legal profession" as compelling factors in the use of the objectively reasonable standard in attorney discipline matters. *Id*.[11]

As the Court of Appeals of New York observed in *Matter of Holtzman*, 577 N.E.2d 30 (N.Y. 1991), employing the actual malice standard "would immunize all accusations, however reckless or irresponsible, from censure as long as the attorney uttering them did not actually entertain serious doubts as to their truth." *Id*. at 34. "A system that permits an attorney without objective basis to challenge the integrity, and thereby the authority, of a judge presiding over a case elevates brazen and irresponsible conduct above competence and diligence, hallmarks of professional conduct." *Cobb*, 838 N.E.2d at 1214.

Upon evaluation of the methodology of other jurisdictions, as outlined above, we find that the rationale underlying the application of an objectively reasonable standard in cases involving criticism of judicial officers is sound and persuasive. We consequently hold that within the context of assessing an alleged violation of Rule 8.2(a) of the West Virginia Rules of Professional Conduct, a statement by an attorney that such attorney knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or

---

[11]As recognized in *Yagman*, prohibiting false or reckless accusations of judicial misconduct is not intended "to shield judges from unpleasant or offensive criticism, but to preserve the public confidence in the fairness and impartiality of our system of justice." 55 F.3d at 1437.

integrity of a judge, adjudicatory officer or public legal officer, or of a candidate for election or appointment to judicial or legal office is not protected by the First Amendment as public speech on a matter of public concern where such statement is not supported by an objectively reasonable factual basis. The State's interest in protecting the public, the administration of justice, and the legal profession supports use of the objectively reasonable standard in attorney discipline proceedings involving disparagement of the credibility of the aforementioned judicial officers.

Employing the objectively reasonable standard in considering whether Mr. Hall's statements concerning ALJ Carter are sanctionable, the HPS exhaustively evaluated every statement made by Mr. Hall concerning the integrity of ALJ Carter. The HPS found clear and convincing evidence that Mr. Hall had made the statements with reckless disregard of their truth or falsity. The HPS further found, by clear and convincing evidence, that Mr. Hall made these statements disparaging the integrity of ALJ Carter without an objectively reasonable factual basis for such statements. Specifically, the HPS found that the following statements by Mr. Hall lacked an objectively reasonable factual basis: ALJ Carter failed to be fair and impartial; she exhibited clear bias; she had personal knowledge of the matters before her; she lied, misrepresented, misstated, and fabricated facts about the history of the case; and she personally knew that the allegations of discrimination were false. Likewise, the HPS found no objectively reasonable factual basis for Mr. Hall's statements that ALJ

18

Carter was unethical; that her finding that CABC had engaged in steering customers based upon race could only be explained because "the individual Respondents are white, while Ms. Carter is black[;]" and that ALJ Carter had engaged "in the most heinous of racial bigotry[.]"

The evidence in this case satisfied the clear and convincing standard as required by the Rules of Lawyer Disciplinary Procedure. Mr. Hall's conduct violated Rule 8.2(a) because the statements made by Mr. Hall in legal pleadings were unsubstantiated, made with a reckless disregard as to their truth or falsity, and impugned the integrity of a presiding adjudicatory officer. Mr. Hall's conduct also violated Rule 8.4(d) by engaging "in conduct that is prejudicial to the administration of justice." His statements threatened the integrity and fairness of the judicial system, were knowingly false or made with reckless disregard of the truth, and were designed to ridicule or exhibit contumacy toward the legal system. As referenced above, an attorney's inflammatory, unprofessional, and disrespectful comments concerning the integrity of a judicial officer, without any objectively reasonable basis for such statements, cannot be tolerated and constitute a clear violation of Rule 8.4(d). Mr. Hall's conduct unquestionably promoted disrespect for the legal system and clearly impugned the integrity of a judicial officer. Mr. Hall indicated that his comments were all made in good faith, that hyperbole was appropriate to "express a sense of outrage," and that calling ALJ Carter's psychiatric well-being into question was a valid argument. We vehemently disagree. Mr. Hall's vitriolic tirade was replete with accusations that had no

19

objectively reasonable basis, and his comments reflected poorly upon the entire legal profession.

## D.  Imposition of Sanctions

This Court has consistently stated that "[a]ttorney disciplinary proceedings are not designed solely to punish the attorney, but rather to protect the public, to reassure it as to the reliability and integrity of attorneys and to safeguard its interest in the administration of justice." *Lawyer Disciplinary Bd. v. Taylor*, 192 W.Va. 139, 144, 451 S.E.2d 440, 445 (1994).  In syllabus point three of *Committee on Legal Ethics v. Walker*, 178 W.Va. 150, 358 S.E.2d 234 (1987), the Court stated:

> In deciding on the appropriate disciplinary action for ethical violations, this Court must consider not only what steps would appropriately punish the respondent attorney, but also whether the discipline imposed is adequate to serve as an effective deterrent to other members of the Bar and at the same time restore public confidence in the ethical standards of the legal profession.

As articulated in *In re Brown*, 166 W.Va. 226, 273 S.E.2d 567 (1980), attorneys are held to an elevated standard of behavior, and this Court has consistently expressed the requirement of adherence to strict ethical standards in the practice of law.  As the *Brown* court stated:

> Woven throughout our disciplinary cases involving attorneys is the thought that they occupy a special position because they are actively involved in administering the legal system whose ultimate goal is the evenhanded administration of justice. Integrity and honor are critical components of a lawyer's character as are a sense of duty and fairness.  Because the legal

20

> system embraces the whole of society, the public has a vital
> expectation that it will be properly administered. From this
> expectancy arises the concept of preserving public confidence
> in the administration of justice by disciplining those lawyers
> who fail to conform to professional standards.

*Id*. at 232-33, 273 S.E.2d at 570.

In assessing sanctions recommended by the Board, this Court stated as follows in syllabus point four of *Office of Lawyer Disciplinary Counsel v. Jordan*, 204 W.Va. 495, 513 S.E.2d 722 (1998):

> Rule 3.16 of the West Virginia Rules of Lawyer
> Disciplinary Procedure enumerates factors to be considered in
> imposing sanctions and provides as follows: "In imposing a
> sanction after a finding of lawyer misconduct, unless otherwise
> provided in these rules, the Court [West Virginia Supreme Court
> of Appeals] or Board [Lawyer Disciplinary Board] shall
> consider the following factors: (1) whether the lawyer has
> violated a duty owed to a client, to the public, to the legal
> system, or to the profession; (2) whether the lawyer acted
> intentionally, knowingly, or negligently; (3) the amount of the
> actual or potential injury caused by the lawyer's misconduct;
> and (4) the existence of any aggravating or mitigating factors.

In addressing the first factor identified above, this Court finds that the HPS properly concluded that Mr. Hall violated duties to his client, to the public, to the legal system, and to the profession. An attorney is obligated to present the most effective argument for his client within the Rules of Professional Conduct and to pursue his client's interests in a lawful manner. Attorneys are encouraged to present zealous advocacy and to

21

pursue all available avenues of relief on the client's behalf. Dissatisfaction with adverse rulings, however, does not justify unwarranted attacks upon the credibility and personal values of the adjudicatory officer. Such irresponsible behavior is injurious to the client's interests and to the attorney's obligation to the legal system.

The HPS also properly ruled upon the second factor under the Rule 3.16 analysis. Mr. Hall acted intentionally and knowingly; his violations were made in writing after deliberation. Moreover, he presented his statements in two separate appeals and has remained steadfast in his assertion that his statements regarding ALJ Carter were justified.

The third factor, an assessment of the degree of actual or potential injury caused by the misconduct, was also thoroughly analyzed by the HPS. Reckless statements regarding the integrity of a presiding judicial officer, such as those made by Mr. Hall, serve to significantly undermine the integrity and public confidence in the administration of justice. Such statements diminish the public's confidence in a fair and impartial administration of justice. Mr. Hall also imposed an intangible injury upon ALJ Carter, through the attacks upon her judicial integrity and her fitness for her position.

The existence of aggravating or mitigating factors is the final consideration under Rule 3.16. This Court has held that "[a]ggravating factors in a lawyer disciplinary

22

proceeding are any considerations or factors that may justify an increase in the degree of discipline to be imposed." Syl. Pt. 4, *Lawyer Disciplinary Bd. v. Scott*, 213 W.Va. 209, 579 S.E.2d 550 (2003). This Court agrees with the HPS finding that Mr. Hall's repetition of the same comments in the Petition of Appeal to the WVHRC and the appeal to the Circuit Court of Kanawha County was an aggravating factor. The HPS also noted that Mr. Hall's continued assertion of the accusations against ALJ Carter in the disciplinary hearing demonstrates his lack of understanding of the effects of his reckless disregard for the truth upon the integrity of the judicial system.

Mitigating factors were also considered by the HPS. In syllabus point two of *Scott*, this Court held that "[m]itigating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify a reduction in the degree of discipline to be imposed." 213 W.Va. at 209, 579 S.E.2d at 550. In syllabus point three of *Scott*, we further explained:

> Mitigating factors which may be considered in determining the appropriate sanction to be imposed against a lawyer for violating the Rules of Professional Conduct include: (1) absence of a prior disciplinary record; (2) absence of a dishonest or selfish motive; (3) personal or emotional problems; (4) timely good faith effort to make restitution or to rectify consequences of misconduct; (5) full and free disclosure to disciplinary board or cooperative attitude toward proceedings; (6) inexperience in the practice of law; (7) character or reputation; (8) physical or mental disability or impairment; (9) delay in disciplinary proceedings; (10) interim rehabilitation; (11) imposition of other penalties or sanctions; (12) remorse;

23

and (13) remoteness of prior offenses.

*Id*. at 210, 579 S.E.2d at 551. The HPS found that the following mitigating factors were present in this case: absence of a prior disciplinary record for Mr. Hall, cooperative attitude toward proceedings, and inexperience in the practice of law. This Court agrees with the HPS findings regarding mitigating circumstances, and our analysis of the four factors set forth in Rule 3.16 compels the conclusion that the sanctions recommended by the Board are proper and accomplish the primary goals of our disciplinary proceedings by punishing Mr. Hall, serving as a deterrent to other attorneys, and ensuring public confidence in the ethical standards of the legal profession.

## IV. Conclusion

Based upon the foregoing, this Court adopts the recommendation of the Board and imposes the following sanctions: Mr. Hall's license to practice law shall be suspended for a period of three months; Mr. Hall shall be ordered to complete an additional three hours of continuing legal education during the 2014-2016 reporting period, specifically in the area of ethics, over and above that already required; and Mr. Hall shall be ordered to reimburse the Board for costs of these disciplinary proceedings, pursuant to Rule 3.15 of the Rules of Lawyer Disciplinary Procedure.

Law License Suspended and Other Sanctions**.**