IN THE SUPREME COURT OF TENNESSEE
AT JACKSON
April 4, 2018 Session

## BOARD OF PROFESSIONAL RESPONSIBILITY v. LARRY EDWARD PARRISH

**Direct Appeal from the Circuit Court for Shelby County**
**No. CT-001608-16    Robert E. Lee Davies, Senior Judge**

———————————————————

**No. W2017-00889-SC-R3-BP**

———————————————————

This is a direct appeal of a disciplinary proceeding involving a Memphis attorney who filed motions to recuse containing pejorative statements about three appellate judges. A hearing panel of the Board of Professional Responsibility found that the attorney had violated multiple Rules of Professional Conduct and that his sanction should be a public censure. The trial court agreed that the attorney was guilty of misconduct but modified the hearing panel's decision, determining that the appropriate sanction was a six-month suspension, with thirty days served on active suspension and the remainder on probation. We hold that the attorney's pejorative statements in the motions to recuse were not protected by the First Amendment and there was material and substantial evidence of noncompliance with the Rules of Professional Conduct. In addition, we hold that the hearing panel acted arbitrarily and capriciously in determining that the attorney should receive a public censure rather than suspension. We affirm the judgment of the trial court.

**Tenn. Sup. Ct. R. 9, § 1.3 (2013)**
**(currently Tenn. Sup. Ct. R. 9, § 33.1(d) (2017))**
**Judgment of the Circuit Court Affirmed**

SHARON G. LEE, J., delivered the opinion of the Court, in which JEFFREY S. BIVINS, C.J., and CORNELIA A. CLARK and ROGER A. PAGE, JJ., joined. HOLLY KIRBY, J., not participating.

Larry E. Parrish, Memphis, Tennessee, Pro Se.

Alan D. Johnson, Brentwood, Tennessee, for the appellee, Board of Professional Responsibility.

**OPINION**

**I.**

This disciplinary action arises from pejorative statements made by attorney Larry E. Parrish in motions to recuse three judges on the Tennessee Court of Appeals after an adverse decision.

Mr. Parrish represented David Morrow and Judy Wright, the nephew and niece of Helen Goza, regarding a trust Ms. Goza had established for her son, John Goza. Under the terms of the trust, any assets remaining in the trust after the death of Mr. Goza were to be disbursed to various charities. After Mr. Goza's death, Mr. Parrish, on behalf of Mr. Morrow and Ms. Wright, filed an action in the Shelby County Chancery Court seeking a declaratory judgment that the trust was not valid and that they were entitled to the trust's remaining assets. The chancery court granted summary judgment, finding that the trust was valid. The Court of Appeals affirmed. *Morrow v. SunTrust Bank*, No. W2010-01547-COA-R3-CV, 2011 WL 334507 (Tenn. Ct. App. Jan. 31, 2011) (*"Goza I"*).

While the appeal in *Goza I* was pending, Mr. Morrow was appointed administrator of the Estate of John Goza. Mr. Parrish, representing the Estate and Mr. Morrow as administrator, filed a petition in probate court to require SunTrust Bank to turn over to the Estate the assets of the trust based on the asserted invalidity of the trust. Soon after, the Court of Appeals issued its ruling in *Goza I*, affirming the validity of the trust. SunTrust Bank then asserted that the probate case was barred by res judicata. The probate court denied the petition on that basis, and the Court of Appeals affirmed. *In re Estate of Goza*, 397 S.W.3d 564 (Tenn. Ct. App. 2012) ("*Goza II*").

Next, Mr. Parrish, as attorney for the Estate, sued SunTrust Bank in the Shelby County Circuit Court. The circuit court dismissed that action, finding that the validity of the trust was res judicata and that it lacked subject matter jurisdiction. The Court of Appeals affirmed the circuit court in a memorandum opinion[1] authored by Judge David Farmer and joined by Judge Steven Stafford and (then)-Judge Holly Kirby. The Court of Appeals also determined the appeal was frivolous and awarded SunTrust Bank its attorney's fees and costs. *Goza v. Wells*, No. W2012-01745-COA-R3-CV, 2013 WL

---

[1] Rule 10 of the Rules of the Court of Appeals of Tennessee provides that the Court of Appeals

with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

4766544 (Tenn. Ct. App. Sept. 4, 2013) ("*Goza III*"). Mr. Parrish moved for a rehearing and to recuse Judge Farmer. Mr. Parrish later filed motions to recuse Judges Stafford and Kirby.[2]

The judges submitted the recusal motions to the Board of Professional Responsibility ("the Board").[3] The motions include the following statements by Mr. Parrish:

- Estate's motion is grounded on Estate's contention that Estate has been denied access to indisputable organic law of Tennessee applied to indisputable facts, and that access has been denied because of a prejudicial and baseless bias, evidently the result of personal sympathies/sensitivities of Judge Farmer.

- In contrast, if Estate shows that Judge Farmer (1) ruled the opposite of what he knew undebatable law to be, (2) wrote as fact that which he knew not to be fact to avoid the effect he knew would be required, if he acknowledged what he knew to be fact, (3) ruled as if *ipse dixit* was a holding and decision, (4) gave *obiter dictum* preclusive effect, (5) used half-truths to fabricate justification for judicial misconduct, (6) without the slightest justification, demeaned counsel for Estate to create a scapegoat for his judicial misconduct, (7) used the Memorandum Opinion as a vehicle to include unnecessary *obiter dictum* as a means, practically speaking, to prejudge case-dispositive issues pending in trial courts and, thereby, usurp the role of the trial courts to adjudge the issue independently and, finally, (8) awarded attorney's fees against Estate based on fabrication, Estate will have established that Judge Farmer is serving, in this case, encumbered by a prejudice and bias against Estate to manufacture an outcome against Estate, in the teeth of indisputable organic law and indisputable fact that dictate the opposite.

---

[2] The motions to recuse Judge Kirby and Judge Stafford were substantially identical to the motion to recuse Judge Farmer.

[3] Rule of Professional Conduct 8.3(a) provides that "[a] lawyer who knows that another lawyer has committed a violation of the Rules of Professional conduct that raises a substantial question as to that lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects, shall inform the Disciplinary Counsel of the Board of Professional Responsibility." Tenn. Sup. Ct. R. 8, RPC 8.3(a) (2013).

- This is not about miscalling balls and strikes; this is about rigging the game.

- Estate's motion further is grounded [sic] how that Judge Farmer adjudicated the appeal in the instant case so as to violate the rights of Estate guaranteed by the *Tennessee Constitution*, Art. I, Section 17 (open courts), thereby, engaging in judicial misconduct which requires Judge Farmer's recusal. The same judicial misconduct violates the procedural and substantive due process rights of Estate and the heirs guaranteed by the *United States Constitution*, Fifth Amendment and Fourteenth Amendment.

- There is absolutely no way under the sun for Estate to fail to prevail in the instant appeal, except by judges deciding the appeal to turn a deaf ear and blind eye to the clearest possible provisions of § 35-15-203.

- Judge Farmer has victimized Estate by saying of a statute, i.e. *Tennessee Code Annotated* § 35-15-203, that it divests circuit court of subject matter jurisdiction, even though a person minimally literate in the English language could very easily read the statute and know, without hesitation, that the statute does exactly the opposite.

- This is an aberrant misstatement of clear law known to Judge Farmer. . . .

- Placing the subject erroneous *ipse dixit* in Judge Farmer's Memorandum Opinion, in practical effect, is a prejudgment designed to prejudice Estate in cases not before Judge Farmer.

- Additionally, the erroneous *ipse dixit* in Judge Farmer's Memorandum Opinion is a setup, i.e., the point is to forewarn Estate not to exercise its right to an appeal in the case where the erroneous *ipse dixit* is dispositive and, if Estate exercises Estate's right to appeal, Judge Farmer is poised to punish Estate for not heeding Judge Farmer's forewarnings.

- Though it takes slightly more acumen than minimal literacy in the English Language, any person trained in the law and minimally versed in how the law treats *ipse dixit* and *obiter dictum*, at once, can see that the court of appeals never before has "held" or "decided" that the putative trust exists.

- The repeated statements in Judge Farmer's Memorandum Opinion that the court of appeals, twice before, "held" or "decided" that the putative trust exists, for Judge Farmer, is a convenient and illegitimately purposeful fabrication.

- In an effort to provide a façade of legitimacy to Judge Farmer's inclusion about the putative trust, Judge Farmer builds a construct on the false presupposition that § 35-15-203 divests circuit court of subject matter jurisdiction, if the putative trust exists.

- The illegitimate purpose for Judge Farmer injecting commentary into Judge Farmer's Memorandum Opinion on the subject of the putative trust is to prejudge, erroneously, if (which is certain to occur) the issue is presented to the court of appeals in the future.

- By use of a memorandum opinion, Judge Farmer insulates his manipulation/rigging of the legal system from review by the Tennessee Supreme Court, i.e., the Supreme Court, even moreso [sic] than in the past, reiterates that it is not an error-correcting court. Therefore, a memorandum opinion, which has zero effect on Tennessee law, has zero chance of being reviewed by the Supreme Court. Knowing this, Judge Farmer is confident that Judge Farmer's patent error and abuse of Judge Farmer's judicial power will remain effective to accomplish Judge Farmer's illegitimate objectives.

- Judge Farmer has done a masterful job of covering up the fact that Judge Farmer has stepped out of Judge Farmer's role as an even-handed Judge and into the role of adversary of the Estate, willing to abuse the power of his judicial office to deny Estate's access to unexceptional organic law of Tennessee well-known to Judge Farmer.

- Many authors, among them Alfred Lord Tennyson, have observed that the half-truth is the most sinister of all deception. The point is that sprinkling into deception particles of truth, misused and taken out of context, makes it much harder to detect deception than a straight out misstatement of objective fact. Judge Farmer has used the half-truth in constructing Judge Farmer's Memorandum Opinion. Judge Farmer's Memorandum Opinion is a patchwork of snippets of truth glued together by adhesive design to close to Estate access to controlling organic law.

- It is the contention of appellant, the Estate of John J. Goza, Deceased (hereinafter "Estate"), as a litigant in the instant appeal and in related proceedings, has been and continues to be denied access to the benefit of the organic law of Tennessee by a demonstrated bias and/or appearance of bias, seemingly anchored in Judge Farmer's personal sympathies/sensitivities that dictate an outcome inconsistent with Tennessee's organic law.

- Let it be clear that Estate finds no fault with Judge Farmer's personal sympathies/sensitivities. The fault Estate finds is in Judge Farmer permitting his personal sympathies/sensitivities to prejudice him in exercise of his undeviating *duty* to apply organic law, even if doing so produces a judgment that offends Judge Farmer's personal sympathies/sensitivities.

- [T]he personal sympathies/sensitivities are visceral, i.e., based on pure assumptions and presumptions without a scintilla of evidence on which to base a finding of fact consistent with Judge Farmer's personal sympathies/sensitivities. Maybe Judge Farmer's [sic] excuses the lack of evidence with what reasonably would be described as a "Come on now, you know and I know" approach appropriate for common parlance and unknown to the legal system and legal process.

- [T]he rights of heirs to receive their inheritance from a predeceased ancestor has been part of the organic law of Tennessee, uninterruptedly, since 1796 and part of Anglo-American jurisprudence since time *in memoriam* [sic], the personal sympathies/sensitivities of Judge Farmer to the contrary notwithstanding.

- [F]or Judge Farmer to be influenced to ignore organic law by his personal sympathies/sensitivities in order to manipulate an outcome to deny the heirs of John J. Goza their inheritance and get the Cash to charities is usurpation of the value judgment of the General Assembly and violates separation of powers guaranteed by *Tennessee Constitution*, Art. I, Section 17 (constraints on the judiciary) and Art. VI.

- Judge Farmer knows the ropes as well as anybody. These characteristics make Judge Farmer's Memorandum Opinion in this case stand out as uncharacteristic. Only the most simpleminded

person would conclude that, in this case, Judge Farmer made inadvertent mistakes.

- To all of the undebatable propositions of law and fact, Judge Farmer effectively turns a deaf ear fixated on making a result that satiates Judge Farmer's sympathies.

- Estate does not wish to create the impression that there is naiveté which keeps Estate from reading between the lines of Judge Farmer's Memorandum Opinion; indeed, Estate perceives that Judge Farmer intended the non-subtle message between the lines be received and headed [sic] as a shot over the bow. The loud message that bleeds through comes [sic] from between the lines is unmistakable and threatening to Estate.

- In a nutshell, what rings clear, on reading Judge Farmer's Memorandum Opinion's commentary, concerning what is tagged *Goza I* and *Goza II*, is that Judge Farmer does not feel Estate's case, insofar as it seeks distribution of the residue of Mrs. Goza's revocable trust to John Goza's heirs, is "right" or "just," and Judge Farmer does not intend, no matter what, ever to render a decision that mandates what Judge Farmer feels is "wrong" or "unjust."

- Added to this feeling, what rings true from what is on the lines of Judge Farmer's Memorandum Opinion is that, if Estate can prove the fraud and the conversion by the individuals who are defendants in the instant case, collecting damages from the individuals would deplete neither the fee income to SunTrust or the amount to be dribbled out, presumably, to charity, does not offend the [sic] Judge Farmer's feelings about what is "right" and "just."

- What role does a judge's oath, practically speaking, play in the day-to-day functioning of a judge? Are there times when it is permissible for judges to lay aside their oath to render a judgment that, though not what the law dictates, is what the judge feels is the "right" thing to do.

- From the outset, Estate makes it clear that Estate has no evidence, has looked for no evidence and makes no accusation that Judge Farmer has taken a bribe; this is completely out of the question. By this, Estate means that there is no evidence that Judge Farmer, in exchange for cash or any other thing of value, has agreed with

another person to do what Estate accuses Judge Farmer of having done.

- Having said that, Estate takes note of the fact that money received by a bribe-taking judge is not the harm such a bribe wreaks on the legal system, on legal process and on the litigants who are victimized by a bribe.

- The harm a bribe wreaks on the legal system and the litigant-victims is what happens when a judge abandons his/her oath of office, surrenders up the impartiality that is essential to a judge functioning in an adjudicative role evenhandedly applying law to facts found from evidence adduced according to rules of evidence.

- While Estate has sought no evidence and has no evidence that Judge Farmer sold his oath and surrendered his impartiality in exchange for money, Estate respectfully suggests that Judge Farmer, in order to victimize Estate as a litigant, has abandoned the loyalty to his oath of office, has surrendered his impartiality and has abused the power entrusted to him by the judicial office he holds and has switched from his role as a judge to become an adversary of Estate. This, in Estate's opinion, is official action of the kind referenced in Rule 8 (RPC), Preamble, section 5.

- Otherwise stated, although there is no evidence that Judge Farmer received a bribe to do what he is doing, Judge Farmer is doing what a bribe-taking judge would do to victimize a litigant who was targeted by a bribe. To a litigant who is targeted, it is totally immaterial what caused the judge to victimize the litigant.

Based on Mr. Parrish's statements in the recusal motions, the Board filed a Petition for Discipline against Mr. Parrish alleging violations of Rules of Professional Conduct 3.5(e),[4] 8.2(a)(1),[5] 8.4(a), 8.4(c), and 8.4(d).[6] In July 2015 after an evidentiary

---

[4] "A lawyer shall not: . . . (e) engage in conduct intended to disrupt a tribunal." Tenn. Sup. Ct. R. 8, RPC 3.5(e) (2013).

[5] "A lawyer shall not make a statement that the lawyer knows to be false or that is made with reckless disregard as to its truth or falsity concerning the qualifications or integrity of . . . (1) a judge. . . ." Tenn. Sup. Ct. R. 8, RPC 8.2(a)(1) (2013).

[6] It is professional misconduct for a lawyer to:

- 8 -

hearing, a Board hearing panel issued a written decision finding that Mr. Parrish had violated:

- Rule 3.5(e) by including statements in the motions to recuse that "constituted abusive and obstreperous conduct intended to disrupt the Tennessee Court of Appeals proceedings involving [Mr. Parrish's] client";

- Rule 8.2(a)(1) by making "statements about the integrity of Judges Farmer, Kirby and Stafford that a reasonable attorney would believe were false" and making those statements "with reckless disregard as to their truth or falsity";

- Rule 8.4(d) by making statements in the motions to recuse that "were prejudicial to the administration of justice"; and

- Rule 8.4(a) by violating Rules 3.5(e), 8.2(a)(1), and 8.4(d).

After a subsequent evidentiary hearing in January 2016, the hearing panel issued a written decision stating that it "considered the applicable provisions of the ABA Standards for Imposing Lawyer Sanctions," and therefore had considered "the duty violated; [Mr. Parrish's] mental state, the injury caused by [Mr. Parrish's] misconduct, and the existence of aggravating and mitigating factors." Without identifying which of the ABA Standards for Imposing Lawyer Sanctions ("ABA Standards") it had applied, the hearing panel concluded that a public censure was the appropriate sanction for Mr. Parrish's conduct.

The Board appealed by filing a Petition for Writ of Certiorari in the Shelby County Circuit Court. Following a hearing, the trial court affirmed the hearing panel's findings that Mr. Parrish had violated Rules 3.5(e), 8.2(a)(1), 8.4(a), and 8.4(d). The trial court also determined that although the hearing panel did not articulate the particular ABA Standard(s) on which it had relied, ABA Standards section 6.0—Violations of Duty Owed to the Legal System—applied.

Under section 6.0, ABA Standard 6.13 provides that "[r]eprimand is generally appropriate when a lawyer is negligent either in determining whether statements or

---

(a)      violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

    . . . .

(c)  engage in conduct involving dishonesty, fraud, deceit, or misrepresentation;

(d)  engage in conduct that is prejudicial to the administration of justice[.]

Tenn. Sup. Ct. R. 8, RPC 8.4 (2013).

documents are false . . . and . . . causes an adverse or potentially adverse effect on the legal proceeding." Under ABA Standard 6.12, "[s]uspension is generally appropriate when a lawyer knows that false statements or documents are being submitted to the court . . . and takes no remedial action, and . . . causes an adverse or potentially adverse effect on the legal proceeding."

After reviewing the record, the trial court found that ABA Standard 6.12 (suspension) applied because Mr. Parrish knew the statements in the motions to recuse were false. The trial court also found that ABA Standard 6.32 applied because Mr. Parrish's statements were "prejudicial to the administration of justice and significantly undermine[d] the integrity and public confidence in the administration of justice." ABA Standard 6.32 provides that "suspension is generally appropriate when a lawyer engages in communication with an individual in the legal system when the lawyer knows that such communication is improper, and . . . causes interference or potential interference with the outcome of the legal proceeding."

The trial court then identified the mitigating and aggravating factors that it considered in determining the appropriate sanction for Mr. Parrish's misconduct. The trial court cited Mr. Parrish's positive reputation in the community and the lack of prior discipline as mitigating factors. As aggravating factors, the trial court considered Mr. Parrish's substantial experience in the practice of law and his refusal to acknowledge the wrongful nature of his conduct.

Based on ABA Standards 6.12 and 6.32 and the mitigating and aggravating factors, the trial court held that Mr. Parrish should be suspended for six months, with one month to be served on active suspension and the remaining five months on probation. Mr. Parrish appealed to this Court.

**II.**

The Supreme Court of Tennessee, as the source of authority for the Board of Professional Responsibility and all of its functions, bears the ultimate responsibility for enforcing the Rules of Professional Responsibility and the ultimate disciplinary responsibility for violations of the ethical rules governing attorneys practicing in Tennessee. *Garland v. Bd. of Prof'l Responsibility*, 536 S.W.3d 811, 816 (Tenn. 2017) (citations omitted); *Sneed v. Bd. of Prof'l Responsibility*, 301 S.W.3d 603, 612 (Tenn. 2010) (citing *Doe v. Bd. of Prof'l Responsibility*, 104 S.W.3d 465, 469–70 (Tenn. 2005)). This Court reviews judgments in disciplinary proceedings against attorneys "in light of our 'inherent power . . . [and] fundamental right to prescribe and administer rules pertaining to the licensing and admission of attorneys.'" *Bd. of Prof'l Responsibility v. Allison*, 284 S.W.3d 316, 321 (Tenn. 2009) (quoting *In re Burson*, 909 S.W.2d 768, 773 (Tenn. 1995)).

When reviewing a judgment in a disciplinary proceeding, this Court's standard of review is the same as that applied by the trial court. *Long v. Bd. of Prof'l Responsibility*, 435 S.W.3d 174, 178 (Tenn. 2014) (citing *Hoover v. Bd. of Prof'l Responsibility*, 395 S.W.3d 95, 103 (Tenn. 2012)). Just as the trial court did, we review the transcript of the evidence presented before the hearing panel, as well as the hearing panel's findings and judgment. *Garland*, 536 S.W.3d at 816 (citing Tenn. Sup. Ct. R. 9, § 33.1(b)).[7] The trial court reviews questions of law de novo, but "shall not substitute its judgment for that of the hearing panel as to the weight of the evidence on questions of fact." *Sallee v. Bd. of Prof'l Responsibility*, 469 S.W.3d 18, 36 (Tenn. 2015) (quoting Tenn. Sup. Ct. R. 9, § 1.3 (2010) and citing *Bd. of Prof'l Responsibility v. Cowan*, 388 S.W.3d 264, 267 (Tenn. 2012)). Like the trial court, we will reverse or modify the hearing panel's decision only when

> the rights of the party filing the Petition for Review have been prejudiced because the hearing panel's findings, inferences, conclusions or decisions are: (1) in violation of constitutional or statutory provisions; (2) in excess of the hearing panel's jurisdiction; (3) made upon unlawful procedure; (4) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or (5) unsupported by evidence which is both substantial and material in the light of the entire record.

*Long*, 435 S.W.3d at 178 (quoting Tenn. Sup. Ct. R. 9, § 1.3 and citing *Bd. of Prof'l Responsibility v. Love*, 256 S.W.3d 644, 653 (Tenn. 2008)). "In determining whether substantial and material evidence supports the panel's decision, the Court evaluates whether the evidence 'furnishes a reasonably sound factual basis for the decision being reviewed.'" *Sneed*, 301 S.W.3d at 612 (quoting *Threadgill v. Bd. of Prof'l Responsibility*, 299 S.W.3d 792, 807 (Tenn. 2009)). A hearing panel's decision is arbitrary and capricious if it "is not based on any course of reasoning or exercise of judgment, or . . . disregards the facts or circumstances of the case without some basis that would lead a reasonable person to reach the same conclusion." *Hughes v. Bd. of Prof'l Responsibility*, 259 S.W.3d 631, 641 (Tenn. 2008) (quoting *City of Memphis v. Civil Serv. Comm'n*, 216 S.W.3d 311, 316 (Tenn. 2007)). A hearing panel abuses its discretion if it "appl[ies] an incorrect legal standard or reach[es] a decision that is against logic or reasoning that causes an injustice to the party complaining." *Sallee*, 469 S.W.3d at 42 (quoting *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001)).

---

[7] Because this disciplinary action was initiated in October 2013, we apply the pre-2014 version of Rule 9. *See Garland*, 536 S.W.3d at 816.

- 11 -

*First Amendment*

Mr. Parrish contends that the statements he made in the motions to recuse are protected speech under the First Amendment of the United States Constitution and Article 1, § 19 of the Tennessee Constitution. Both the hearing panel and the trial court concluded that Mr. Parrish's statements in the motions to recuse violated Rules of Professional Conduct 3.5(e), 8(a), 8.2(a)(1), and 8.4(d) and are not entitled to constitutional protection. We agree.

This Court has in past disciplinary proceedings distinguished between in-court and out-of-court statements in determining whether the First Amendment protects an attorney's speech. In *Board of Professional Responsibility v. Slavin*, 145 S.W.3d 538 (Tenn. 2004), we held that pejorative statements made by an attorney in motions and other pleadings filed in state and federal courts were not entitled to First Amendment protection.

In *Ramsey v. Board of Professional Responsibility,* 771 S.W.2d 116, 121 (Tenn. 1989), the Court applied the subjective "actual malice" standard established by the United States Supreme Court in *New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964),[8] to determine whether the attorney's out-of-court statements to the media were constitutionally protected. There, we held that an attorney's out-of-court statements to the media were protected by the First Amendment, explaining that after a case has concluded, an attorney has the right to make statements that criticize the court and the judiciary, "so long as the criticisms are made in good faith with no intent . . . to willfully or maliciously misrepresent the persons and institutions or bring them into disrepute."

In *Slavin*, we explicitly distinguished *Ramsey* because the statements at issue in *Slavin* were made during in-court judicial proceedings, and "[i]*n the context of judicial proceedings*, an attorney's First Amendment rights are not without limits." *Slavin*, 145 S.W.3d 549 & n.9 (emphasis added). Notably, in *Ramsey*, we held that although the attorney's out-of-court comments to news media were protected by the First Amendment, the attorney's conduct during in-court judicial proceedings—refusing to obey the court's orders, slamming the courtroom door, and refusing to answer the judge's questions—was sanctionable because it was "prejudicial to the administration of justice." *Ramsey*, 771 S.W.2d at 122–23.

---

[8] In the context of a defamation action, the United States Supreme Court held in *Sullivan* that a public official could not recover damages without proving that "the statement was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." 376 U.S. 254, 279–80.

In *Slavin*, we noted that the United States Supreme Court has stated that "during a judicial proceeding, whatever right to 'free speech' an attorney has is extremely circumscribed." 145 S.W.3d at 549 (quoting *Gentile v. State Bar of Nev.*, 501 U.S. 1030, 1071, 111 S.Ct. 2720, 115 L.Ed.2d 888 (1991)). The distinction between in-court and out-of-court speech is supported by the rationale that "[a]lthough litigants and lawyers do not check their First Amendment rights at the courthouse door, those rights are often subordinated to other interests inherent in the judicial setting." *Slavin*, 145 S.W.3d at 549. We also quoted with approval the observation made by the Supreme Court of Kentucky that the statements at issue need not be false to constitute attorney misconduct because "[t]here can never be a justification for a lawyer to use such scurrilous language with respect to a judge in pleadings or in open court." *Slavin*, 145 S.W.3d at 549 (quoting *Ky. Bar Ass'n v. Waller*, 929 S.W.2d 181, 183 (Ky. 1996)).[9]

By our holding in *Slavin* that the attorney's in-court speech was not entitled to First Amendment protection, "we intend[ed] to limit an attorney's criticisms of the judicial system and its officers to those criticisms which are consistent in every way with the sweep and the spirit of the Rules of Professional Conduct." *Id.* at 550 (citing *Fla. Bar v. Ray*, 797 So.2d 556, 560 (Fla. 2001)).[10]

This Court's rulings in similar cases, including cases that were not analyzed in terms of the First Amendment, are consistent with our holding in *Slavin*. In *Farmer v. Board of Professional Responsibility*, 660 S.W.2d 490, 491 (Tenn. 1983), we affirmed discipline for an attorney for "scurrilous and improper language" in briefs that he had filed accusing the Court of Appeals of making intentionally false findings of fact and calling the judges and opposing counsel liars. In affirming the sixty-day suspension imposed by the hearing panel, we noted that the attorney had written the "briefs and other documents in question and deliberately chose to use language and tactics which cannot be tolerated in the legal profession." *Id.* at 493. More recently, in *Bailey v. Board of Professional Responsibility*, 441 S.W.3d 223 (Tenn. 2014), we affirmed a sixty-day suspension where an attorney's misconduct in court—repeatedly violating the court's orders and admonitions during a jury trial—resulted in a mistrial. We noted that "[e]ven if an attorney believes that the court has issued an erroneous ruling, zealous representation of a client 'never justifies the use of disrespectful, unprofessional or indecorous language to the court.'" *Id.* at 234 (quoting *In re Moncier*, 550 F. Supp. 2d

---

[9] The attorney in *Waller* filed numerous "scandalous and bizarre" pleadings, including one stating in its opening paragraph that the current judge was "much better than that lying incompetent ass-hole [sic] [he] replaced if [the current judge] graduated from the eighth grade." 929 S.W.2d at 181–82.

[10] This case, like *Slavin*, is distinguishable from the situation in *Ramsey*, which involved out-of-court speech. Whether an attorney's out-of-court speech continues to be subject to an actual malice standard in a disciplinary proceeding is not presently before the Court.

768, 807 (E.D. Tenn. 2008)). In *Hancock v. Board of Professional Responsibility*, 447 S.W.3d 844, 853 (Tenn. 2014), we found an attorney had violated Rule of Professional Conduct 3.5 by stating in an e-mail to a judge that he was a "bully" and a "clown" because "[t]he conduct need not occur inside a courtroom to be disruptive to a tribunal." *See also Ward v. Univ. of the South*, 354 S.W.2d 246, 249 (Tenn. 1962) (stating that although it is proper for an attorney to point out the court's errors in a brief, it is not acceptable for the attorney to "insert matters which are defamatory, scandalous, impertinent and untrue" into a brief, and the court will not "tolerate, either orally or by brief, . . . abuse of the . . . judge. . . .").

In cases analyzed in terms of the First Amendment, courts in numerous other jurisdictions, as well as the United States Supreme Court, have rejected the proposition that the First Amendment provides absolute protection to attorney speech. *Disciplinary Counsel v. Gardner*, 793 N.E.2d 425, 439 (Ohio 2003) (citing *In re Sawyer*, 360 U.S. 622, 646, 79 S.Ct. 1376, 3 L.Ed.2d 1473 (1959) (Stewart, J., concurring in result)) ("Thus, attorneys may not invoke the federal constitutional right of free speech to immunize themselves from even-handed discipline for proven unethical conduct."); *In re Shearin*, 765 A.2d 930, 938 (Del. 2000) (ethical obligations imposed on attorneys qualify their constitutional right to freedom of speech); *In re Pyle*, 156 P.3d 1231, 1243 (Kan. 2009) (holding that attorneys' constitutional free speech rights are "tempered by their obligations to the court and bar"); *In re Disciplinary Action Against Graham*, 453 N.W.2d 313, 321 (Minn. 1990) (First Amendment protection of attorney speech is not absolute); *Matter of Westfall*, 808 S.W.2d 829, 835 (Mo. 1991) (the state may restrict a lawyer's constitutional rights where there is a threat to a significant state interest); *Lawyer Disciplinary Bd. v. Hall*, 765 S.E.2d 187, 196 (W.Va. 2014) (First Amendment protection of statements critical of judges is not absolute).

A majority of courts that have dealt with attorney speech in disciplinary proceedings have not drawn a distinction between in-court and out-of-court statements in considering the issue and have adopted an objective standard in determining whether attorney speech is entitled to First Amendment protection. *The Florida Bar v. Ray*, 797 So.2d 556, 559–60 (Fla. 2001); *In re Dixon*, 994 N.E.2d 1129, 1136–37 (Ind. 2013); *Attorney Disciplinary Bd. v. Weaver*, 750 N.W.2d 71, 81–82 (Iowa 2008); *In re Cobb*, 838 N.E.2d 1197, 1213 (Mass. 2005); *Graham*, 453 N.W.2d at 322–23; *Mississippi Bar v. Lumumba*, 912 So.2d 871, 884 (Miss. 2005); *Matter of Westfall*, 808 S.W.2d 829, 837 (Mo. 1991); *Gardner*, 793 N.E.2d at 431–32; *Hall*, 765 S.E.2d at 197 (quoting *Graham*, 453 N.W.2d at 322). The Court of Appeals of New York pointed out in *Matter of Holtzman*, 577 N.E.2d 30, 34 (N.Y. 1991), that the United States Supreme Court has never extended the *Sullivan* standard to attorney discipline. The *Holtzman* court noted that the application of the subjective "actual malice" standard of *Sullivan* to attorney discipline "would immunize all accusations, however reckless or irresponsible, from censure as long as the attorney uttering them did not actually entertain serious doubts

- 14 -

about their truth." *Id.* The use of a different standard—the objective standard—is supported by "the state's interest in protecting the public, the administration of justice, and the legal profession. . . ." *Disciplinary Counsel v. Shimko*, 983 N.E.2d 1300, 1305 (Ohio 2012) (citations omitted).

Under the objective standard, the court assesses the statements in terms of "what the reasonable attorney, considered in light of all his professional functions, would do in the same or similar circumstances . . . [and] focus[ing] on whether the attorney had a reasonable factual basis for making the statements, considering their nature and the context in which they were made." *Gardner*, 793 N.E.2d at 431 (citations omitted). "It is the reasonableness of the belief, not the state of mind of the attorney, that is determinative." *Holtzman*, 577 N.E.2d at 34.

In *Gardner*, the attorney had moved to reconsider, accusing the appellate court of being dishonest and ignoring well-established law, claiming that it had "issued an opinion so 'result driven' that 'any fair-minded judge' would have been 'ashamed to attach his/her name to it' and that the panel did not give a 'damn about how wrong, disingenuous, and biased its opinion is.'" *Gardner*, 793 N.E.2d at 427. The Ohio Supreme Court rejected the attorney's claim that his statements were merely opinions and thus immune from discipline as in the context of a defamation case. Instead, the Ohio Supreme Court adopted the majority approach that the First Amendment does not protect an attorney from discipline "for expressing an opinion, during court proceedings, that a judge is corrupt when the attorney knows that the opinion has no factual basis or is reckless in that regard." *Id.* at 428–29. The *Gardner* court explained that a state's "compelling interest in preserving public confidence in the judiciary supports applying a standard in disciplinary proceedings different from that in a defamation case." *Id.* at 432.

The Massachusetts Supreme Court explained its rationale for adopting the objective standard for attorney discipline cases as opposed to the subjective, or "actual malice," standard applied in defamation actions in terms of the differences in the societal interest served by the two bodies of law. *Cobb*, 838 N.E.2d at 1213. While a defamation action addresses a wrong directed against an individual, in a professional disciplinary action, "the wrong is against society as a whole, the preservation of a fair, impartial judicial system, and the system of justice as it has evolved for generations. . . ." *Id.* Unwarranted statements criticizing judges only serve to weaken the public's trust in the judicial system. *Id.*

The court in *Graham* reasoned that the objective standard was appropriate in attorney disciplinary cases because "[t]he standard applied must reflect that level of competence, of sense of responsibility to the legal system, of understanding of legal rights and of legal procedures to be used only for legitimate purposes and not to harass or intimidate others, that is essential to the character of an attorney. . . ." 453 N.W.2d at 322.

Under the objective standard, the fact that the attorney's feelings as expressed in his statements were "genuine" did not negate the finding that he had acted with reckless disregard as to the truth or falsity of his statements. *Id.* at 322–23.

We hold that the objective "reasonable attorney" standard is the appropriate standard to apply in a disciplinary proceeding involving an attorney's in-court speech. Utilizing this objective standard,[11] the hearing panel found that Mr. Parrish had made statements in the motions to recuse about the integrity of the judges on the Court of Appeals that a reasonable attorney would believe to be false, and that Mr. Parrish had made those statements with reckless disregard as to their truth or falsity.

In sum, the in-court statements that Mr. Parrish made in the recusal motions were not protected by the First Amendment.[12] The hearing panel's decision that these statements violated Rules of Professional Conduct 3.5(e), 8.2(a), 8.4(c), and 8.4(d) is supported by material and substantial evidence.

*Appropriate Sanction*

Next, we consider whether the appropriate sanction for Mr. Parrish's misconduct is a public censure as found by the hearing panel or suspension as determined by the trial court. In determining the appropriate sanction in an attorney disciplinary matter, the ABA Standards serve as guideposts, and they direct the court, in applying the Standards, to consider:

(1)     What ethical duty did the lawyer violate? (A duty to the client, the public, the legal system, or the profession?);

(2)     What was the lawyer's mental state? (Did the lawyer act intentionally, knowingly, or negligently?);

---

[11] The hearing panel, in its order ruling on motions argued during the telephonic hearing of June 29, 2015, began its analysis by stating that the parties had agreed, both in their filings and in oral argument, that in the context of a disciplinary proceeding, the objective standard set forth in *Gardner* applies to evaluate an attorney's statements about the judiciary. Mr. Parrish later claimed in post-hearing filings with the hearing panel and in the trial court proceedings that he had not agreed that the objective standard was correct. The record before this Court does not contain a transcript of the June 29, 2015 telephonic hearing. Although Mr. Parrish did not appeal the ruling of the hearing panel, the trial court held that he had not waived the issue during the hearing before the panel because the Board acknowledged the possibility that there might have been some misunderstanding there between the parties.

[12] Our resolution of the First Amendment claim also resolves Mr. Parrish's claim under Article I, § 19 of the Tennessee Constitution.

(3)     What was the extent of the actual or potential injury caused by the lawyer's misconduct? (Was there a serious or potentially serious injury?); and

(4)     Are there any aggravating or mitigating circumstances?

*Bailey*, 441 S.W.3d at 232 (citing *Bd. of Prof'l Responsibility v. Maddux*, 409 S.W.3d 613, 624 (Tenn. 2013)).

The hearing panel found that the statements made by Mr. Parrish in the motions to recuse "constituted abusive and obstreperous conduct intended to disrupt the Court of Appeals proceedings involving [his] client," and thus violated Rule 3.5(e). The hearing panel also determined that a reasonable attorney would believe that the statements made in the motions to recuse about the integrity of the judges were false, and so those statements violated Rule 8.2(a)(1). The hearing panel also concluded that the statements were prejudicial to the administration of justice, and thus violated Rule 8.4(d). Finally, Mr. Parrish's violations of Rules 3.5(e), 8.2(a)(1), and 8.4(d) violated Rule 8.4(a).

Although the hearing panel stated in its Final Order Imposing Sanction that it had considered the applicable provisions of the ABA Standards, it did not identify which of the ABA Standards it considered. The trial court affirmed the findings of fact made by the hearing panel regarding the violations of the Rules of Professional Conduct. The trial court then looked to ABA Standard 6.0 applicable to violation of duties owed to the legal system to determine what level of sanction was warranted. "Generally speaking, '[t]he ABA Standards suggest the appropriate baseline sanction, and aggravating and mitigating factors may justify an increase or reduction in the degree of punishment to be imposed.'" *Bd. of Prof'l Responsibility v. Barry*, 545 S.W.3d 408, 422 (Tenn. 2018) (quoting *In re Vogel*, 482 S.W.3d 520, 534 (Tenn. 2016)).

Citing the definition of "knowledge" in the ABA Standards,[13] the trial court found evidence in Mr. Parrish's testimony before the hearing panel and in the voluminous pleadings that Mr. Parrish knew the statements in the motions to recuse were false. The trial court then noted that the ABA Standards that recommend a reprimand are conditioned upon a finding that the attorney was negligent, and that the hearing panel "at the very least" had found Mr. Parrish to be "reckless" with regard to the truth or falsity of the statements made in the motions to recuse. The trial court concurred with the finding of the hearing panel that Mr. Parrish made false statements that the appellate judges had "purposefully ignored binding law, purposefully fabricated facts, manipulated and rigged

---

[13] The ABA Standards define "knowledge" as: "conscious awareness of the nature of attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result." ABA Standards, Black Letter Law, Definitions.

- 17 -

the legal system, acted in a manner that indicated they had taken bribes, abused their judicial power, surrendered their impartiality, and ruled against his clients due to personal sympathies and bias." The trial court found that there was no factual basis for such statements and that the only "fact" Mr. Parrish had was that the Court of Appeals had ruled against his client. Because the trial court determined that the pleadings and the proof submitted to the hearing panel showed that Mr. Parrish acted knowingly, it found that a suspension was appropriate under ABA Standards 6.12 and 6.32, applicable when a lawyer knows that false statements are being submitted to the court and when a lawyer engages in communication with an individual in the legal system that the lawyer knows to be improper. The trial court further looked to the definition of "injury" in the ABA Standards,[14] and stated that "it goes without saying that statements of this nature by an attorney which falsely accuse a judge of this type of misconduct are prejudicial to the administration of justice and serve to significantly undermine the integrity and public confidence in the administration of justice."

The trial court next considered the applicable aggravating and mitigating factors that it had identified–Mr. Parrish's substantial experience in the practice of law and his refusal to acknowledge the wrongful nature of his conduct as aggravating factors; the absence of prior discipline and Mr. Parrish's positive reputation in the community as mitigating factors. After deciding that the aggravating factors outweighed the mitigating factors, the trial court determined that a six-month suspension was the appropriate sanction, with one month to be served on active suspension and the remaining five months to be served on probation.

We conclude that the hearing panel acted arbitrarily and capriciously in finding that a public censure was warranted. Mr. Parrish made the statements in the recusal motion knowingly, not negligently. Therefore, ABA Standard 6.12 applies, not ABA Standard 6.13. Under ABA Standard 6.12, the presumptive sanction is suspension, not a reprimand. The hearing panel offered no explanation as to why it did not apply ABA Standard 6.12 and no reason is apparent from the record. *See Barry*, 545 S.W.3d at 425 (finding that the hearing panel's decision to impose suspension instead of the presumptive sanction of disbarment under the ABA Standards, in the absence of mitigating factors, was arbitrary or capricious). The hearing panel's decision "seems at odds with the factual findings and assessment . . . of the level of intent and culpability found by the hearing panel." *Id.*

Mr. Parrish argues that a public censure rather than suspension is warranted, not based on the ABA Standards or any precedent in prior cases, but because a suspension would be an unconstitutional suppression of his right to free speech on the subject of

---

[14] The ABA Standards define "injury" as: "harm to a client, the public, the legal system, or the profession which results from a lawyer's misconduct." ABA Standards, Black Letter Law, Definitions.

judicial reform. The Board contends that the suspension imposed by the trial court is appropriate under the ABA Standards. To determine the appropriate sanction, it is helpful to consider sanctions we have imposed in cases with similar facts. "This Court 'evaluate[s] each instance of attorney discipline in light of its particular facts and circumstances,' even as it 'consider[s] the sanctions that have been imposed in prior cases that present similar circumstances so as to maintain consistency and uniformity in disciplinary proceedings.'" *Bailey*, 441 S.W.3d at 236 (quoting *Bd. of Prof'l Responsibility v. Maddux*, 148 S.W.3d 37, 40 (Tenn. 2004)). *See also Napolitano v. Bd. of Prof'l Responsibility*, 535 S.W.2d 481, 502 (Tenn. 2017) (quoting *Bd. of Prof'l Responsibility v. Reguli*, 489 S.W.3d 408, 424 (Tenn. 2015)) ("When reviewing disciplinary sanctions, this Court reviews comparable cases to ensure consistency in discipline.").

In *Bailey*, the attorney received a sixty-day suspension for misconduct in court–repeatedly violating the court's orders–resulting in a mistrial. 441 S.W.3d at 237. The attorney in *Farmer* received a sixty-day suspension for statements in an appellate brief calling judges on the Court of Appeals and another attorney liars. 660 S.W.2d at 491. In *Slavin*, we imposed a two-year suspension for pejorative statements made in motions and other pleadings filed in state and federal courts. 145 S.W.3d at 551. In *Ramsey,* we affirmed an attorney's suspension for six months, with forty-five days on active suspension and the remaining 135 days on probation for his in-court behavior of slamming courtroom doors, refusing to obey court orders, and refusing to answer questions from the judge. 771 S.W.2d at 123.

Sanctions imposed in similar cases in other jurisdictions are also instructive. In *Gardner*, the Ohio Supreme Court imposed a six-month suspension for the attorney's comments in a motion accusing the court of being "dishonest and ignoring well-established law" and "so 'result-driven' that 'any fair-minded judge' would have been ashamed to attach his/her name" to the opinion. 793 N.E.2d at 433. The attorney in *Waller* was suspended for six months for comments made in a pleading filed with the trial court calling the previous judge in the case a "lying incompetent ass-hole [sic]" and stating that the new judge would be much better than the previous one if he graduated from the eighth grade. 929 S.W.2d at 181, 183.

Like the attorney in *Slavin*, Mr. Parrish made in-court statements impugning the integrity of the judges, albeit without the repeated misconduct present in *Slavin.* Like the attorney in *Farmer*, Mr. Parrish "deliberately chose to use language and tactics which cannot be tolerated in the legal profession." 660 S.W.2d at 493. And, like the attorney in *Gardner*, Mr. Parrish accused the Court of Appeals judges of being dishonest and ignoring established law, skewing and ignoring the facts, and violating their oaths to decide cases fairly and impartially. 793 N.E.2d at 427.

Although Mr. Parrish claims that his statements were justified by his steadfast belief in judicial reform, attorneys who cross the line from tolerable criticism to unacceptable speech "may not avoid punishment by claiming that their misconduct served the greater good or the interest of their clients, as such exceptions would overwhelm the rules." *Bailey*, 441 S.W.3d at 237 (quoting *Slavin*, 145 S.W.3d at 551). Mr. Parrish's argument in that regard is much like the defense raised by John J. Hooker who was disciplined for filing "frivolous lawsuits using the most baseless invectives." *In re Hooker*, 340 S.W.3d 389, 392 (Tenn. 2011). According to the trial court, Mr. Hooker considered himself a "constitutional warrior for the people" and believed that his lawsuits could not be frivolous for that reason. We noted that Mr. Hooker completely missed the point—the disciplinary proceeding concerned only the question of whether the attorney in fulfilling his perceived role as "constitutional warrior" was subject to the Rules of Professional Conduct. *Id.* at 393.

Likewise, Mr. Parrish's attempt to justify his conduct by claiming that he is on a crusade for judicial reform misses the point. This case is not about Mr. Parish's beliefs in judicial reform. Rather, this case involves Mr. Parrish's in-court derogatory statements about the integrity of three appellate court judges in violation of the Rules of Professional Conduct.

## III.

We hold that Mr. Parrish's pejorative statements in the motions to recuse were not protected by the First Amendment. The hearing panel's decision that Mr. Parrish violated Rules of Professional Conduct 3.5(e), 8.2(a)(1), 8.4(a), and 8.4(d) is supported by material and substantial evidence. The hearing panel, however, acted arbitrarily and capriciously in determining that the appropriate sanction for Mr. Parrish's misconduct was a public censure rather than suspension. Thus, we affirm the judgment of the trial court imposing a six-month suspension, with one month served on active suspension and the remaining five months on probation. We tax the costs of this appeal to Larry E. Parrish, for which execution may issue if necessary.

_____
SHARON G. LEE, JUSTICE

- 20 -