#30736-SRJ
**2025 S.D. 62**

IN THE SUPREME COURT

OF THE

STATE OF SOUTH DAKOTA

* * * *

IN THE MATTER OF THE DISCIPLINE OF
TUCKER VOLESKY
AS AN ATTORNEY AT LAW

* * * *

ORIGINAL PROCEEDING

* * * *

THOMAS H. FRIEBERG of
State Bar of South Dakota
Beresford, South Dakota                     Attorneys for Disciplinary
                                            Board.


MICHAEL F. TOBIN of
Boyce Law Firm, LLP
Sioux Falls, South Dakota                   Attorneys for respondent.

* * * *

ARGUED
AUGUST 27, 2025
OPINION FILED **11/12/25**

#30736

JENSEN, Chief Justice

[¶1.]		The Disciplinary Board of the State Bar of South Dakota initiated formal disciplinary proceedings against Attorney Tucker Volesky after concluding that his conduct in handling several lawsuits and the management of his law firm trust account violated the South Dakota Rules of Professional Conduct (Rules).  The Board recommended a 30-day suspension of Volesky's license to practice law. Volesky denied the allegations and this Court appointed retired circuit court Judge Craig Pfeifle (Referee) to conduct an evidentiary hearing.  The Referee also determined that Volesky violated the Rules and recommended this Court suspend Volesky's license to practice law for 30 days and that he be placed on a probationary term of no less than six months.  After considering the record and the recommendations of the Board and the Referee, we conclude Volesky violated the Rules and impose discipline.[1]

### General Background

[¶2.]		Volesky is a 2019 graduate of the USD Knudson School of Law and was admitted to the State Bar of South Dakota in October of the same year.  He is a

---

1.	In considering this case, the members of the Court are in the unique position of addressing Volesky's conduct, which included commencing a lawsuit against the members of this Court and alleging the Court had fabricated evidence.  The Judicial Canons require a judicial officer to at all times remain impartial and avoid even the perception of impartiality, but a judicial officer "shall also hear and decide matters assigned except those in which disqualification is required."  The Court, as the regulatory body for attorney licensing and discipline in South Dakota, "has the responsibility of protecting the public from the unfit, the incompetent and the dishonest attorney, and the duty to maintain the high ethical standard of the legal profession." *In re Discipline of Russell*, 2011 S.D. 17, ¶ 39, 797 N.W.2d 77, 87.  Each member of the Court understands these obligations and has no interest in this case other than to fulfill our responsibility to regulate the Bar.

solo practitioner with one employee, and he has offices in Mitchell and Huron. He shares office space with his father and brother, although he maintains a separate practice. Volesky has a general law practice that focuses on civil and criminal litigation, including court-appointed criminal defense. Volesky served as a part-time city attorney for Huron from June 2020 to August 2024 and served as a part-time tribal judge for the Sisseton-Wahpeton Oyate Tribal Court from October 2020 to October 2024.

[¶3.] The Board began investigating three separate disciplinary complaints arising from Volesky's representation of Bret Healy in multiple lawsuits involving Healy's family ranch (the Ranch). During the course of the investigation, the Board also began investigating Volesky's handling of his law firm trust account.

[¶4.] To provide context for the disciplinary proceedings, we initially review three related lawsuits Healy filed while represented by other counsel, before Volesky began representing him. In the first lawsuit against Healy's mother, Mary Osborne; his two brothers, Bryce Healy and Barry Healy; the family's attorney, Steven Fox; Healy Ranch Partnership (HRP); and Healy Ranch, Inc. (HRI), Healy claimed to own 50% of the Ranch "pursuant to his interests in [HRP and HRI]." *Healy v. Osborne*, 2019 S.D. 56, ¶ 2, 934 N.W.2d 557, 559–60 (*Healy I*). Healy asserted claims for conversion, fraud, conspiracy to commit fraud, breach of contract, breach of the implied covenant of good faith and fair dealing, breach of fiduciary duties, negligence, and unjust enrichment, and he requested that the court pierce the corporate veil of HRI. *Id.* ¶ 11, 934 N.W.2d at 561. The circuit court dismissed the action, concluding Healy's claims were untimely, and awarded

attorney fees under SDCL 15-17-51, finding the lawsuit was frivolous and malicious.

[¶5.] On appeal, this Court affirmed, concluding Healy's claims were time-barred by the applicable statutes of limitations. The Court also upheld the circuit court's imposition of attorney fees, writing that "[Healy] filed the lawsuit for the purpose of preventing the sale of the property, not because he believed his partnership interest remained enforceable." *Id.* ¶ 37, 934 N.W.2d at 567. In support of the latter conclusion, the Court referred to and quoted a portion of a June 2016 email from Healy to Barry in which Healy purportedly stated: "I owned 25% of the place – mom insisted on 1/3 to everyone – so yes I did put all my chips back in for 8%. . . ." *Id.* ¶¶ 29, 37, 934 N.W.2d at 565, 567.

[¶6.] While *Healy I* was pending on appeal, Healy filed a notice of claim for marketable title under SDCL 43-30-5, part of the South Dakota Marketable Title Act (SDMTA), asserting HRP held an interest in the Ranch. *Healy Ranch, Inc. v. Healy*, 2022 S.D. 43, ¶ 1, 978 N.W.2d 786 (*Healy II*).[2] Healy's notice of claim listed the parcels that constitute the Ranch—the same property that was at the heart of Healy's principal claims in *Healy I*. In response to Healy's notice of claim, HRI brought a quiet title action against Healy and HRP, seeking to establish "marketable title" under the SDMTA. Healy filed a counterclaim to quiet title of the Ranch in HRP. The circuit court quieted title to the subject property in favor of HRI

---

2. Chief Justice Jensen was disqualified from both *Healy I* and *Healy II*, and circuit court Judge Jon Sogn sat by designation in both of those cases.

and determined Healy had not timely filed his claim under the governing twenty-two-year statutory period.

[¶7.]		On appeal, this Court disagreed with the circuit court's conclusion regarding timeliness. We nevertheless concluded that res judicata barred Healy's "counterclaim seeking to quiet title in HRP." We explained:

> [Healy's] quiet title counterclaim in this case is an overt effort to litigate the same cause of action that he litigated in [*Healy I*]. Although the specific legal theories advanced in the two cases are different, of course, [Healy] is again addressing the same wrong he identified in [*Healy I*]—the alleged wrongful conduct by members of his family to vest HRI with ownership of the Ranch. The underlying facts are the same, as is [Healy's] principal argument that *HRI does not truly own the Ranch.*

*Id.* ¶ 49 (emphasis added).

[¶8.]		The third lawsuit brought by Healy before Volesky was retained was *Healy Ranch P'ship v. Mines*, 2022 S.D. 44, 978 N.W.2d 768 (*Mines*). HRP, through Healy, filed a quiet title action against Larry and Sheila Mines (and others), regarding a parcel of the Ranch commonly known as RH-2. This Court affirmed the circuit court's entry of summary judgment, dismissing Healy's quiet title action based on judicial estoppel and SDCL 15-3-15. We stated: "Under the circumstance presented here, the application of judicial estoppel is appropriate. [Healy] may not, in the name of HRP, re-fashion his claim regarding RH-2 into a quiet title action that contemplates the land was never transferred and, instead, has been permissively used for the past thirty years by others who have farmed it and paid the taxes." *Id.* ¶ 60, 978 N.W.2d at 784.

[¶9.]		In January 2021, Volesky entered into an "EMPLOYMENT CONTRACT– HOURLY FEE" with Healy. Healy agreed to employ Volesky to

represent him in pursuing an action under the Racketeer Influenced and Corrupt Organizations Act (RICO) at a rate of $220 per hour with a $7,500 retainer. Shortly thereafter, Volesky filed a complaint in federal district court on behalf of Healy and/or HRP against Healy's mother Mary, Healy's brother Bryce, and attorney Fox, alleging mail fraud, bank fraud, and conspiracy to engage in a pattern of racketeering. *Healy v. Fox*, 572 F. Supp. 3d 730, 734–35 (D.S.D. 2021) (*Fox*), aff'd, 46 F.4th 739 (8th Cir. 2022). The district court dismissed Healy's suit based on res judicata, explaining:

> [Healy] claimed injury in the state court action from the 1995 transfer from the partnership to HRI because it deprived him of his interest held by the partnership. In the Amended Complaint, [Healy] claims injury from the 1995 transfer from the partnership to HRI because it was part of an illegitimate stock issuance that ultimately provided the vehicle for the RICO conspiracy. Therefore, the "underlying facts" which give rise to each cause of action are the same.

*Id.* at 743.

[¶10.] On appeal, the Eighth Circuit Court of Appeals affirmed based upon res judicata. The court concluded, "[Healy] is again addressing the same wrong he identified in [*Healy I*]—the alleged wrongful conduct by members of his family to vest HRI with ownership of the Ranch." *Healy v. Fox*, 46 F.4th 739, 744 (8th Cir. 2022) (second alteration in original) (citation omitted).

[¶11.] In August 2023, Volesky, on behalf of Healy and HRP, filed a second federal court action against this Court, HRI, Mary, Barry, Bryce, Fox, and Mines, alleging a due process violation by this Court, fraud, misrepresentation, and other misconduct. *Healy v. Sup. Ct. of S.D.*, No. 4:23-CV-04118-RAL, 2023 WL 8653851, at *1 (D.S.D. Dec. 14, 2023) (*Healy III*), reconsideration denied, No. 4:23-CV-04118-

RAL, 2024 WL 2150336 (D.S.D. Apr. 11, 2024). In an amended complaint filed March 24, 2024, Healy also named the South Dakota Supreme Court justices and circuit court Judge Jon Sogn in their official and individual capacities, claiming a deprivation of his civil rights under 42 U.S.C. § 1983. *Id.*

[¶12.] The amended complaint signed by Volesky referenced a "fake email"— the email chain between Healy and his brother Barry from June 2016, in which Healy purportedly stated: "I owned 25% of the place – mom insisted on 1/3 to everyone – so yes I did put all my chips back in for 8% . . . ." Although Healy did not deny authoring the email, he claimed the email chain the Court referred to in *Healy I* was "altered, truncated, and misleading." Healy alleged that in *Healy I*, the Court "quotes the altered email as 'telling' on the issue of whether [Healy] had notice of the 1995 warranty deed" and that "the Supreme Court utilized the fake email to nullify [Healy's] on the record dispute of when he discovered the 1995 warranty deed."

[¶13.] The amended complaint in *Healy III* also alleged, among other claims, that this Court in *Healy II*, "conducted fact finding and weighed evidence;" "denied [Healy] and HRP an opportunity to respond;" "denied [Healy] and HRP the opportunity to be heard regarding ownership of Healy Ranch real property;" and "ignored the *Healy II* record . . . , which contained evidence regarding the fake email." The amended complaint signed by Volesky asserted a cause of action under 42 U.S.C. § 1983, alleging that Healy was deprived of his right and the equal protection of law when the "Supreme Court pretended that [Healy] did not dispute the June 28, 2016 email, the November 2001 confidential financial statement, or

that they did not dispute the defendants' statements of undisputed material facts in *Healy I*."

[¶14.] The district court dismissed the action against the members of the Court, determining it lacked subject matter jurisdiction under the *Rooker-Feldman* doctrine and that the claims against the Court would also be barred by the Eleventh Amendment and judicial immunity. The district court dismissed the claims against the other defendants because "[r]es judicata on several levels now bars the extraordinary relief Plaintiffs seek from this Court—reversal or vacating of the Eighth Circuit final decision from the prior litigation and reversal and vacating of three final decisions of the Supreme Court of South Dakota." *Healy III*, 2023 WL 8653851 at *12. In addition, the district court granted a motion for sanctions under Rule 11 of the Federal Rules of Civil Procedure, filed by the defendants other than the members of the Court, concluding that the claims were not warranted under "existing law or a good faith, nonfrivolous argument for some modification or extension of existing law." *Id.*

[¶15.] Following the dismissal and sanctions order, Volesky, on behalf of Healy, filed a motion for reconsideration and a motion for leave to file a second amended complaint. In addition to the above allegations, the proposed second amended complaint alleged, inter alia, that the members of this Court: "fabricated evidence in *Healy I*, and then used the fabricated evidence to decide the case, which was used in deciding *Healy II* and [*Mines*];" "fabricated the fake email evidence by quoting only part of the text and omitting material language;" "fabricated evidence that was material and used the said fabricated evidence without providing notice to

-7-

Healy that they intended to use evidence that the Supreme Court Defendants themselves fabricated;" and "utilized the decision based on fabricated evidence in deciding subsequent cases." The district court in *Healy III* denied the motion for reconsideration and motion for leave to file second amended complaint.[3]

[¶16.] Volesky next represented Healy and HRP in challenging a dissolution action brought by HRI, which sought court supervised dissolution of the corporation—*In re Dissolution of Healy Ranch, Inc.,* First Judicial Circuit, Civ. No. 23-000058. In that action, Volesky, on behalf of Healy and/or HRP, sought dismissal of the petition for dissolution, claiming in essence that Healy and/or HRP owned a majority interest in HRI. The circuit court, Judge Patrick Smith, presiding, dismissed the action and issued an order to show cause as to why Healy and Volesky should not be sanctioned for violating SDCL 15-6-11(b). Ultimately, the circuit court concluded Healy and Volesky violated SDCL 15-6-11(b) and imposed a monetary sanction against Healy in the amount of $240,000 and against Volesky in the amount of $10,000. In addition to the monetary sanction, the circuit court indicated it was "duty bound" to report Volesky's conduct to the disciplinary board of the State Bar of South Dakota. Healy, appearing pro se, has appealed the circuit court's sanction against him and that appeal is pending before the Court, Appeal No. 30666. Volesky did not appeal the sanction issued against him.

---

3. The Eighth Circuit Court of Appeals affirmed, without opinion, the district court's order dismissing his action and imposing sanctions against him. *Healy v. Sup. Ct. of S.D.*, No. 24-1996, 2025 WL 999468, at *1 (8th Cir. Apr. 3, 2025) (per curiam).

[¶17.] Thereafter, Volesky represented Healy for a final time in a lawsuit in federal district court against Judge Smith and the Brule County clerk of courts, claiming the issuance of the sanction violated his due process rights and violated 42 U.S.C. 1983. *Healy v. Miller*, No. 4:24-CV-04053, 2024 WL 3823097 (D.S.D. Aug. 14, 2024) (*Miller*). After disciplinary proceedings were instituted against Volesky, he withdrew from representation of Healy in both of the then-pending federal actions—*Healy III* and *Miller*. Healy acted pro se in *Miller* until dismissal of that action. Healy then appealed to the Eighth Circuit, which affirmed without an opinion.

### Disciplinary Board Proceedings and Decision

[¶18.] Three separate disciplinary complaints were filed against Volesky. The complaints were filed by two of the attorneys who represented the Healy family members as defendants in the Healy lawsuits and by Judge Smith. The complaints centered around the litigation commenced by Volesky on behalf of Healy, and particularly focused on the proposed second amended complaint and brief in support of leave to file the second amended complaint filed by Volesky in *Healy III*. One of the disciplinary complaints alleged that Volesky's accusations against members of the Court, including that they fabricated evidence and knowingly made a false statement, violated Rule 8.2(a), which states in part: "A lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge."

[¶19.] The Board began investigating the complaints and reviewed Volesky's law firm trust account records during the course of the investigation. At a hearing

before the Board, Volesky personally appeared, with counsel, and was questioned concerning the Healy lawsuits and the handling of his trust account. The Board filed its written formal accusation with this Court, including findings of fact, conclusions of law, and recommendation, as follows:

24.     After Judge Lange entered his Opinion and Order Dismissing Case and for Sanctions, Volesky filed a Motion for Reconsideration and, just over a month later, on February 12, 2024, a motion requesting leave to file a second amended complaint. The proposed second amended complaint alleged in numerous paragraphs that defendants Justice Janine Kern, Justice Mark Salter, sitting justice Judge Jon Sogn, Justice Patricia Devaney, Justice Scott Myren, and Chief Justice Steven Jensen, officially and individually, had "knowingly fabricated evidence and used the fabricated evidence deciding cases against the Plaintiffs," to the detriment of Bret Healy in reaching their decision in *Healy I.*

* * *

34.     The actions of Volesky in filing the various lawsuits regarding ownership of Healy Ranch property are all attempts to have the decision of the South Dakota Supreme Court in *Healy I* overturned and vacated.

* * *

37.     Volesky had numerous email communications with other lawyers and Bret Healy regarding the pleadings, but indicated that all of the filings were his idea and supported by his client Bret Healy in an attempt to substantiate his unfounded claim to ownership of more than one-third of Healy Ranch properties.

38.     Volesky believes that his error in the filings is that he made the direct allegations of fabrication by the South Dakota Supreme Court and its justices, including sitting justice Judge Jon Sogn, rather than making these allegations upon information and belief.

39. The actions of Volesky in filing the numerous lawsuits were not based upon a good faith belief that there were facts and law which supported the claims being made.

40. Volesky failed to properly research the law and made claims which had no basis in law and fact (i) when filing the claims against the South Dakota Supreme Court, its justices, and sitting justice Judge Jon Sogn and (ii) in filing an action against Judge Patrick T. Smith and the Brule County Clerk of Courts regarding sanctions imposed for filing a motion to dismiss an action to dissolve Healy Ranch, Inc.

\* \* \*

53. Bret Healy was a litigious and particularly difficult client when considering Volesky's relative lack of experience in handling complex litigation such as the familial dispute litigated by the Healy family over the course of several years and several lawsuits.

[¶20.] The Board also made several findings regarding Volesky's handling of his client trust account:

44. Volesky has failed to comply with trust accounting rules and standards by retaining funds in his trust account which are fees he has earned from his representation of clients.

45. Volesky withdraws funds from his trust account based upon the first funds received into the trust account and in random amounts which are not related to the earning of fees in any individual case.

46. Volesky has used his trust account as a personal savings account and has retained earned fees in his client trust account for many months, if not years, after the fees are earned.

47. The comingling of funds constitutes a violation of the trust account rules for South Dakota attorneys.

48. Volesky does not report fees as earned for purposes of reporting South Dakota sales tax and/or federal income tax until the fees are paid out of his trust account.

49. Volesky's trust accounting practices have resulted in a substantial understatement of his fees earned for both sales tax and income tax reporting.

50. Volesky has acknowledged that he has approximately ten (10) current clients who should have trust account balances for unearned fees. Yet Volesky's individual trust ledgers show more than 40 client matters with trust account balances totaling $356,671.73 as of his April 30, 2024, trust account bank statement.

51. By way of example, Volesky has $161,377.56 in his trust account for fees earned in representing Bret Healy.

52. Volesky also holds $95,684.83 in earned fees in his trust account for a matter that was settled in 2022 with final distribution to his client in April 2023.

[¶21.] The Board concluded that Volesky had violated South Dakota Rules of Professional Conduct Rule 1.1 (competent representation of a client); Rule 3.1 (prohibiting initiating or defending issues for which there is no good faith basis in law and fact); Rule 8.2 (prohibiting a lawyer from making statements known to be false or in reckless disregard of the truth or falsity of the statement); Rule 8.4(d) (prohibiting conduct that is prejudicial to the administration of justice); and SDCL 16-18-20.2 (prohibiting earned fees from being commingled with client trust funds). The Board recommended that Volesky's license to practice law in South Dakota be suspended for a period of 30 days and that he provide proof that he removed personal funds from his client trust account.

[¶22.] In his answer and objections to the Board's complaint, Volesky denied that "there was no basis in law or fact to support his allegations that [the Court] . . . fabricated evidence when deciding *Healy I*" and disputed that the ownership of HRI had been previously decided. Volesky also denied that "all of the filings were his

idea and supported by his client Bret Healy in an attempt to substantiate his unfounded claim to ownership of more than one-third of Healy Ranch properties." However, at the Board hearing, Volesky was asked: "Are these lawsuits, including suing the South Dakota Supreme Court, your idea or [Healy's] idea?" He responded, "That was my idea." Volesky was asked, "But as you are sitting here today, was it your best legal judgment that that's what you needed to do and attack it the way you did?" He answered, "That's what I concluded."

[¶23.]     With regard to Volesky's handling of his trust account, he admitted "that he has at times retained earned legal fees in his trust account after those fees were earned" but stated it was not his intention to violate any rule, and from his "perspective, it is uncertain about when attorneys must remove earned funds from their trust account, and he reasonably believed that he was properly acting within his discretion." At the hearing, however, Volesky testified that to his understanding, "[y]ou are not supposed to have personal funds in the trust account." Volesky also denied that his trust accounting practices resulted in a "substantial understatement of his fees earned for both sales tax and income tax reporting," but he admitted at the Board hearing that approximately $95,000 of earned fees remained in the trust account on which sales tax had not been paid, nor had the sum been reported as income.

## Referee Proceedings and Decision

[¶24.]     At the hearing before the Referee, Volesky testified about the three general areas of alleged violations, beginning with his trust accounting practices. Volesky testified that after the Board hearing, he materially changed how he

operates his trust account by being "mindful to move money out when a client matter is finished to get it out of the trust." He also acknowledged that prior to the hearing, he would leave the earned fees in the trust account "until eventually I would come across and bill it out and in the natural course of things as it was taken out once a month."

[¶25.] Volesky testified he was no longer commingling trust account funds with fees earned and he acknowledged the obligation in Rule 1.15A "to keep client's property separate from the lawyer's property[.]" Nevertheless, Volesky would not admit that he violated any of the rules pertaining to trust accounting.

[¶26.] Regarding his representation of Healy, Volesky first testified that Healy "had the idea of bringing a federal action. I framed it up as to how it was going to be done." Later, Volesky claimed that the "idea of bringing the action" was his (Volesky's) and that he "determined the path to get into federal court." Volesky agreed that before bringing the action, it occurred to him "that maybe [he was] stepping into troubled waters." However, he did not agree that Healy was making demands of him that made him uncomfortable.

[¶27.] At the hearing on the motion for injunctive relief in *Healy III*, Judge Lange concluded, "[T]here's limited success on the merits here, they're *highly dubious*." (Emphasis added.) Volesky testified that after that hearing, he had "increased concerns about the path that [he] was going down" with the case against the Court; yet he never discussed with Healy that they should "pump the brakes and just not move forward." Volesky also confirmed that at the time he filed the motions for reconsideration and leave to file the second amended complaint against

-14-

the Court (February 12, 2024), he was already facing sanctions for the failed actions in federal court and for the state court dissolution action.

[¶28.] Volesky was questioned about his use of the phrase, "fabricated evidence" that was used at least ten times in the proposed second amended complaint. He testified that fabricated means "manufacturing evidence" and that he had a "good faith basis," a factual basis, to make that claim. He later agreed that the definition of "fabricated" is to "invent or concoct something typically with deceitful intent" and believed that based on that definition, there was a "plausible legal claim" against the members of the Court for fabrication of evidence.

[¶29.] Later in his testimony, when asked by the Referee if he was "alleging that the Supreme Court manufactured an e-mail" or that it "used it out of context," Volesky responded, "[i]t was used out of context and . . . it was misleading in the way that it was used." The Referee then asked whether Volesky thought the Court made up the statement that was the second basis for the fabrication claim against the Court—the statement that Healy had access to records. Volesky responded, "It wasn't in the record and it wasn't used in defendant's statement of facts."

[¶30.] Volesky's own attorney later asked, "[B]ut you were not contending that any member of the Supreme Court or Judge Sogn collectively or individually went and created fake evidence and then somehow surreptitiously put it into the record?" Volesky responded, "No, not specifically like that, no." Instead, he agreed that his concern was "more that there seemed to be three to four instances of discussion in the *Healy I* opinion that from [his] understanding seemed to differ from how [he] understood the record."

[¶31.] Despite Volesky's consistent denials that the fabricated evidence allegation was improper, Volesky testified that Healy had agreed to indemnify Volesky for any sanctions imposed against him in the federal court actions after the attorney with whom Volesky consulted on the RICO claims had suggested it. Volesky testified that while the thought crossed his mind to "pump the brakes" or withdraw, he "kept plowing ahead." Volesky also testified that he would not have withdrawn from representing Healy had he not received the first two disciplinary complaints, and that he withdrew on advice of counsel.

[¶32.] When asked why he felt "the need to add the additional claims about the fabricated evidence" in the proposed second amended complaint, Volesky explained that "was the stronger way to frame it *to avoid a dismissal.*" (Emphasis added.) He agreed that to a certain extent, he was trying to "*plead around arguments on a motion to dismiss.*" (Emphasis added.) His attorney asked, "why did you believe you needed to include the allegations of fabricated evidence to potentially get around a motion to dismiss, why was that remotely helpful if at all?" Volesky testified he believed such allegations would overcome judicial immunity because such immunity "is not going to apply to protect the fabrication of evidence challenge." Volesky's attorney again questioned his strategy in adding the fabrication of evidence allegations, and Volesky agreed that part of his strategy was to plead around the anticipated arguments to survive a motion to dismiss. When asked what he could have done differently, he responded that he should have included the language "upon information and belief."

[¶33.] The Referee entered its findings of fact, conclusions of law and recommendation, many of which mirror the Board's. Several of the Referee's findings are particularly significant:

19. In the South Dakota Federal Court action against the South Dakota Supreme Court, its justices and sitting justice Judge Jon Sogn, Judge Roberto Lange held a hearing on November 20, 2023, wherein he denied a preliminary injunction request, in part, because the Plaintiff who Volesky represented was unable to show a likelihood of success on the merits. Judge Lange concluded there was a limited likelihood of success and that doing so was "highly dubious[.]"

* * *

21. Volesky has testified that he made this allegation based upon what he believed to be factual errors by the Court. These include: use of an email quoted out of context, suggestion that Healy had access to records without adequate support in the record, reliance on a financial statement of Healy Ranch in an incomplete fashion. Volesky admitted no basis in law or fact to support his allegations that the South Dakota Supreme Court, its acting justices and sitting justice Judge Sogn had fabricated evidence when deciding *Healy I*. At hearing Volesky testified the motivation behind the allegation was his effort to avoid a dismissal of the claims, particularly a concern with judicial immunity.

* * *

29. As noted by Judge Smith, the actions of Volesky in filing the multiple lawsuits regarding ownership of Healy Ranch property are ultimately all attempts to have the decision of the South Dakota Supreme Court in *Healy I* overturned and vacated. Volesky seems unable to accept that decision despite numerous setbacks before multiple courts.

* * *

31. On February 21, 2024, Volesky confirmed with Bret Healy via email that Bret Healy agreed to indemnify Volesky for

-17-

sanctions imposed in any matter. Volesky did not appeal Judge Smith's order regarding personal sanctions. Those remain unpaid as he stated he does not wish to prejudice Mr. Healy's appeal of those sanctions ordered against him.

\* \* \*

33.     Volesky testified at hearing he believes that his error in these multiple filings is that he made the direct allegations of fabrication by members of the Court, rather than making these allegations upon "information and belief."

34.     There was no recognition by Volesky at any time, either in his filings or in testimony that the fact of multiple filings itself is problematic.

35.     The actions of Volesky in filing the numerous lawsuits show a lack of understanding of the information and legal theories needed to support a filing with the court. No fact or law supported the claims being made.

36.     Volesky simply failed to properly research or understand the law when filing the federal claims against the South Dakota Supreme Court, and the federal action against Judge Patrick T. Smith.

\* \* \*

42.     Prior to his hearing before the Board, Volesky operated his trust account as a personal savings account by retaining earned fees in his client trust account sometimes for significant periods of time even after the fees were earned.

43.     The retention of earned fees in the trust account resulted in the commingling of his funds with client funds for which he was entrusted.

44.     The commingling of funds puts client funds at risk for loss to creditors of Volesky.

45.     To his credit, after the Board hearing, Volesky modified the way he administered his trust account by removing

client funds once fees are earned and/or client matters are concluded.

46. Prior to the Board hearing, Volesky did not consider fees as earned for purposes of reporting South Dakota sales tax and/or federal income tax until the fees were disbursed from his trust account.

47. Volesky's trust accounting practices prior to the Board hearing were not in compliance with South Dakota rules.

48. In no proceeding to date has Volesky acknowledged or agreed that he violated any rules of professional conduct or that he was in violation of rules governing client trust accounts. Volesky testified at hearing that he believe[s] he violated no rule of professional conduct nor did his trust accounting practices violate state statute.

* * *

53. Volesky's failure to acknowledge the errors made in his representation of Healy is concerning and raises questions as to his competency to practice law.

54. Volesky has not had a previous disciplinary history and remains welcome to practice before Judge Smith. He has continued to practice and has no other pending issues or complaints of which the Referee is aware.

[¶34.] Consistent with the Board's determinations, the Referee concluded that Volesky violated SDCL 16-18-20.2 and Rules 1.1, 3.1, 8.2, and 8.4. The Referee also highlighted "Volesky's unwillingness to recognize the concerns for the conduct at issue," and recommended that Volesky's license to practice law be suspended for 30 days and that he be placed on a probationary term of no less than six months, during which time he be required to secure a mentor to assist in rules compliance.

[¶35.] Upon receipt of the Referee's findings and conclusions, this Court set the case for hearing and heard arguments from the Board, Volesky's attorney, and Volesky personally. During arguments, Volesky's attorney stated that Volesky was

remorseful for being before the Court, but "does not believe he did anything wrong." During his comments to the Court, Volesky apologized for being before the Court, stated he held the Court in utmost respect and was committed to upholding the values of professionalism and integrity, but denied that any of his conduct had violated the Rules of Professional Conduct.

**Standard of Review**

[¶36.]     This Court will "give careful consideration to [the Referee's] findings as they had the advantage of seeing and hearing the witnesses." *In re Discipline of Dorothy*, 2000 S.D. 23, ¶ 16, 605 N.W.2d 493, 497 (citation omitted).  As such, "[w]e will not disturb the [R]eferee's findings when they are supported by the evidence." *In re Discipline of Frauenshuh*, 2023 S.D. 18, ¶ 18, 989 N.W.2d 541, 549 (second alteration in original) (quoting *In re Discipline of Mines*, 2000 S.D. 89, ¶ 14, 612 N.W.2d 619, 626).  "Affording deference to the [R]eferee's findings in disciplinary proceedings when they are based upon live testimony is appropriate." *In re Discipline of Ravnsborg*, 2024 S.D. 58, ¶ 25, 12 N.W.3d 306, 315.  However, "we review findings based on documentary evidence de novo." *Id.* (citation omitted).

[¶37.]     "The ultimate decision for discipline of members of the State Bar rests with this Court." *Dorothy*, 2000 S.D. 23, ¶ 16, 605 N.W.2d at 497 (citing *In re Discipline of Claggett*, 1996 S.D. 21, ¶ 9, 544 N.W.2d 878, 880).  Accordingly, "this Court gives no particular deference to a [R]eferee's recommended sanction." *Id.* (citation omitted).

-20-

## Analysis

[¶38.]    "A license to practice law in this state is a privilege and a continuing proclamation by the Supreme Court that a licensed attorney is an officer of the Court, is fit to be entrusted with legal and judicial matters, and is able to aid in the administration of justice.  It is the duty of an attorney to act, both professionally and personally, in conformity with the standards of conduct governing members of the bar." *Ravnsborg*, 2024 S.D. 58, ¶ 27, 12 N.W.3d at 315 (quoting SDCL 16-19-31).  "As an officer of the court, an attorney is subject to special obligations and duties, measured by the high standards of the code of ethics and responsibility, and the rules of professional conduct, and must meet and exceed the minimum standards set by the rules regardless of the capacity in which the attorney acts."  7 C.J.S. *Attorney & Client* § 73.  Further, attorneys must "meet standards of courtesy, common sense, and the constraints of the judicial system, maintaining a respectful attitude toward the court and refraining from anything that will tend to destroy the confidence of the public in the courts." *Id.*

[¶39.]    An attorney's violation of the oath of office, of the laws governing attorneys' conduct, or of the Rules of Professional Conduct constitutes misconduct and is grounds for disciplinary action.  *See* SDCL 16-19-32.  Volesky is charged with misconduct for violating SDCL 16-18-20.2 and Rules 1.1, 3.1, 8.2, and 8.4.  The vast majority of the underlying facts and the findings of fact from the Board and the Referee are not genuinely in dispute.  Nonetheless, Volesky denies that his conduct violated any of the Rules.

***Whether Volesky engaged in misconduct***

        1.     *SDCL 16-18-20*

[¶40.]        Pursuant to SDCL 16-18-20, -20.1 and -20.2, every member of the State Bar of South Dakota handling client funds must adhere to certain trust accounting procedures.  Among other things, these procedures require an attorney to maintain a separate bank account for client funds.  SDCL 16-18-20.2.  The Rules also prohibit the commingling of client funds with the attorney's personal funds:

> A lawyer shall hold property of clients or third persons that is in
> a lawyer's possession in connection with a representation
> separate from the lawyer's own property.  Funds shall be kept in
> a separate account maintained in the state where the lawyer's
> office is situated[.]

Rule 1.15(a).  *See also In re Discipline of Tidball*, 503 N.W.2d 850, 853–54 (S.D. 1993); *In re Discipline of Light*, 2000 S.D. 100, ¶ 10, 615 N.W.2d 164, 167 ("Rule 1.15 governs the safekeeping of client property, while SDCL 16-18-20.2 specifies the minimum accounting records that must be maintained and the procedures that must be followed when handling trust accounts.  Additionally, SDCL 16-18-20.2 contains the format to be used when filing the annual certificate of compliance.").

[¶41.]        We agree with the determinations of the Board and Referee that Volesky allowed "his earned fees to be [commingled] with client trust funds" and "failed to comply with proper trust accounting standards."  Although Volesky refused to admit to violating trust accounting rules, the commingling of earned fees with client trust funds is apparent from his own testimony and further evidenced by Volesky's modification of the manner in which he maintains his trust account.  We conclude, therefore, that Volesky violated SDCL 16-18-20.2 and Rule 1.15.

### 2. Rule 1.1

[¶42.] Rule 1.1 states: "A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." We take our "obligation to assure the public of the competency of the bar most seriously." *In re Discipline of Laprath*, 2003 S.D. 114, ¶ 68, 670 N.W.2d 41, 62.

[¶43.] The Referee's conclusion that Volesky violated Rule 1.1 was based on the following determination:

> [H]e did not possess the legal knowledge, skill, thoroughness and preparation reasonably necessary for the competent representation of Bret Healy in the various lawsuits attacking the South Dakota Supreme Court, its justices and sitting justice Judge Jon Sogn, as well as the litigation filed against Circuit Court Judge Patrick T. Smith and the Brule County Clerk of Courts. He was unable to understand existing legal authority, or recognize the finality of decisions made by this State's highest court.

[¶44.] From our review of the record, Volesky's continued efforts to relitigate the ownership of HRI and related issues in spite of multiple courts' rulings on the issue reflects a fundamental inability to conform his pleadings and arguments consistent with the doctrines of res judicata, collateral estoppel, and/or claim preclusion. *See, e.g.*, *Buster v. Greisen*, 104 F.3d 1186, 1190 (9th Cir. 1997), *as amended on denial of reh'g* (Mar. 26, 1997) (in applying sanctions, court noted the suit was "barred by the *res judicata* and collateral estoppel effects of the prior judgment," and a "*reasonable and competent inquiry* would have led to [that] conclusion") (second emphasis added). Similarly, Volesky's erroneous belief that he could plead any facts or claim necessary to avoid dismissal of a lawsuit, regardless

of merit, also reflects a lack of understanding of his role as an attorney advocate. In sum, Volesky's repeated efforts to litigate and relitigate patently frivolous and precluded claims suggests either a profound misunderstanding of the law or an intentional unwillingness to abide by well-established legal principles and prior state and federal court decisions.[4] Either way, this conduct violates the requirement of Rule 1.1 to provide competent representation to his client.

### 3. Rule 3.1

[¶45.] Volesky was also found to have violated Rule 3.1, which states: "A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law." Though we have not previously expounded on this Rule, the comments to the Model Rules of Professional Conduct explain that attorneys have a "duty to use legal procedure for the fullest benefit of the client's cause, but also a duty not to abuse legal procedure. The law, both procedural and substantive, establishes the limits within which an advocate may proceed." Model Rules Pro. Conduct r. 3.1 cmt.1. Further, attorneys must ensure that they "can make good faith arguments in support of their clients' positions." *Id.* cmt.2. An action is frivolous "if the lawyer is unable either to make a good faith argument on the merits of the action taken or to support the action taken by a good faith argument for an extension, modification or reversal of existing law." *Id.*

---

4. At the hearing before the Referee, Volesky testified to his belief that the various courts' decisions are wrong.

[¶46.] The Referee concluded that Volesky violated Rule 3.1 by "initiating and/or defending proceedings and asserting issues therein for which there was no good faith basis in law and fact." The Referee determined that this included Volesky's efforts in federal district court to overturn the South Dakota Supreme Court's decision in *Healy I*, claims that are precluded by the *Rooker-Feldman* doctrine, as well as the claim that the sitting justices had fabricated evidence when deciding *Healy I*.

[¶47.] We agree with the Referee's conclusion that the ownership claims Volesky pled in *Healy III* lacked a good faith basis in law and fact. Likewise, the allegations against the members of the Court in *Healy III* were made without any good faith basis in law or fact, particularly the fabrication of evidence claim that Volesky asserted in the proposed second amended complaint.

[¶48.] It is noteworthy that the violation of Rule 3.1 appears to have been intentional. Volesky testified that he attempted to add the fabrication claim to avoid dismissal and this justification for that claim was repeated by both Volesky and his attorney at oral argument. *See Iowa Sup. Ct. Att'y Disciplinary Bd. v. Caghan*, 927 N.W.2d 591, 605 (Iowa 2019), *as amended* (May 14, 2019) (concluding attorney violated Rule 3.1, noting, "We can only conclude that [attorney's] factual assertion that [clients] had no knowledge of the Scott County foreclosure action was a fiction created to buttress [attorney's] effort to avoid summary judgment[.]"); *Berman & Feldman v. Winn Dixie, Inc.*, 684 So. 2d 320, 323 (Fla. Dist. Ct. App. 1996) ("The actions of counsel in the court below in attempting to create a cause of action where none existed were both unreasonable and unprofessional. Not only

was [attorney] aware that the complaint was deficient, but he personally interlineated in the allegation in question, knowing that it was insupportable, in an obvious effort to avoid dismissal.").

### 4. Rule 8.2

[¶49.]    Rule 8.2 provides in part: "A lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge, adjudicatory officer or public legal officer, or of a candidate for election or appointment to judicial or legal office." The Referee concluded that Volesky violated Rule 8.2 by making "statements that he knew to be false and with reckless disregard as to the truth or falsity . . . when he alleged [the] fabrication of evidence" and specifically found that "Volesky acknowledged that there was no factual basis to suggest that any member of the Court had created or falsified evidence."

[¶50.]    While rare, allegations of judges fabricating evidence have been the subject of attorney disciplinary actions. For instance, in *Lawyer Disciplinary Bd. v. Hall*, 765 S.E.2d 187, 192–93 (W. Va. 2014), an attorney accused an administrative law judge and a federal district court judge of judicial misconduct, fabrication of evidence, corruption, and fraud. Citing other jurisdictions that "have disciplined attorneys for making statements in pleadings impugning the integrity of judges," the court concluded such statements violated Rule 8.2. *Id.* at 195. The court held, "Mr. Hall's conduct violated Rule 8.2(a) because the statements made by Mr. Hall in legal pleadings were unsubstantiated, made with a reckless disregard as to their

truth or falsity, and impugned the integrity of a presiding adjudicatory officer." *Id.* at 199.

[¶51.]     Similarly, in *Anthony v. Virginia State Bar*, the attorney, in a petition for a writ of certiorari to the United States Supreme Court, stated, "This case presents a situation in which the lower courts were unable to police themselves to avoid misuse of judicial power." 621 S.E.2d 121, 125 (Va. 2005). The attorney also alleged that an "investigation" "revealed that the justices of the Virginia Supreme Court had received ex parte communication, concealed it, wrongfully declared it confidential, mischaracterized it and ultimately destroyed it after a copy was requested." *Id.* The attorney later filed a petition for rehearing, referring to "material judicial misconduct," "major fabrications of evidence by the Federal District Court," "obvious creation/manufacturing of evidence by judges," a "determination that was made on a fraudulent basis," a "corruption of the judicial process," and "a complete abdication of judicial integrity." *Id.* The Supreme Court of Virginia agreed that the attorney "had made statements about a number of judges involving their qualifications and integrity and that he made those statements with reckless disregard of their truth or falsity." *Id.*; *see also In re Reed*, 716 N.E.2d 426, 427 (Ind. 1999) (concluding attorney violated Rule 8.2 by stating, inter alia, that the judge "was ignorant, that she was being improperly influenced by politicians, [and] that she had fabricated a report about liquor being present in court offices").

[¶52.]     Our review of the facts and applicable authorities in this case lead us to the same conclusion regarding Volesky's fabrication allegation. Volesky has

failed to identify any evidence of conduct that would constitute a fabrication of evidence by this Court. Yet, he persisted in his description of his claim that the Court fabricated evidence as a "bold" or "legally plausible" claim. It was neither. Rather, Volesky has acknowledged that his claim of fabrication of evidence lacked any basis in law or fact and that the allegation was made to avoid dismissal of the federal court lawsuit. We, therefore, conclude that Volesky's fabrication claim was made with the knowledge that it was false or with reckless disregard of the truth, in violation of Rule 8.2.

> 5. *Rule 8.4*

[¶53.] Pursuant to Rule 8.4(d), it is "professional misconduct" for a lawyer to "[e]ngage in conduct that is prejudicial to the administration of justice." The rule stated in 8.4(d) is "written broadly both to cover a wide array of offensive lawyer conduct and to prevent attempted technical manipulation of a rule stated more narrowly." Restatement (Third) of the L. Governing Laws. § 5 (2000). The "rule is most often applied to conduct connected with proceedings before a tribunal" but has also been applied to an attorney's attacks on the integrity of judges, and to an attorney's abuse of process, such as advancing frivolous arguments. Model Rules of Pro. Conduct r. 8.4.

[¶54.] The court in *Hall* concluded that the attorney's statements found to violate Rule 8.2 were also a violation of Rule 8.4(d). 765 S.E.2d at 199. The court explained:

> Mr. Hall's conduct also violated Rule 8.4(d) by engaging "in conduct that is prejudicial to the administration of justice." His statements threatened the integrity and fairness of the judicial system, were knowingly false or made with reckless disregard of

-28-

> the truth, and were designed to ridicule or exhibit contumacy toward the legal system. As referenced above, an attorney's inflammatory, unprofessional, and disrespectful comments concerning the integrity of a judicial officer, without any objectively reasonable basis for such statements, cannot be tolerated and constitute a clear violation of Rule 8.4(d).

*Id.*

[¶55.] Similarly, Volesky's unsupported claim accusing the Court of fabricating evidence unquestionably impugned the integrity of this Court. His allegation suggested the Court intentionally abandoned its role as a neutral decisionmaker and resorted to subterfuge to ensure that Healy was unsuccessful in his action to establish ownership of the Ranch. The personal and unfounded attack on the character and impartiality of the members of the Court negatively affects the public's perception of the Court, diminishes the public's trust in the Court and its decisions, and weakens the public's faith in the legal profession as a whole. *See id.* (determining attorney's unsubstantiated allegations "unquestionably promoted disrespect for the legal system and clearly impugned the integrity of a judicial officer . . . and his comments reflected poorly upon the entire legal profession"). Volesky's allegation against this Court had the potential to "significantly undermine the integrity and public confidence in the administration of justice," and diminish the "public's confidence in a fair and impartial administration of justice." It is a clear violation of Rule 8.4.

### *Appropriate discipline for Volesky's misconduct*

[¶56.] Having concluded that Volesky violated SDCL 16-18-2, and Rules 1.1, 3.1, 8.2, and 8.4(d), we must consider the appropriate discipline. The goals of attorney discipline include: "(1) '[protect] the public from further fraudulent,

unethical or incompetent activities' the attorney is involved in; (2) '[preserve] the image and integrity of the attorneys, the bar association and the legal profession as a whole'; and (3) 'deter like conduct by other attorneys.'" *Ravnsborg*, 2024 S.D. 58, ¶ 27, 12 N.W.3d at 315 (alterations in original) (citations omitted). The purpose of the disciplinary proceedings is not, however, to punish the attorney. *Id.* (citation omitted). "The real and vital issue to be determined is whether or not the accused, from the whole evidence as submitted, is a fit and proper person to be permitted to continue in the practice of law." *Id.* (citation omitted).

[¶57.]     "Appropriate discipline in any given case necessarily depends upon the seriousness of the misconduct by the attorney and the likelihood of repeated instances of similar misconduct." *Laprath*, 2003 S.D. 114, ¶ 77, 670 N.W.2d at 64 (quoting *In re Discipline of Martin*, 506 N.W.2d 101, 105 (S.D. 1993)). "The disciplinary options at this Court's disposal are provided under SDCL 16-19-35 as: 'public censure, placement on probationary status, suspension for up to three years and disbarment.'" *Mines*, 2000 S.D. 89, ¶ 15, 612 N.W.2d at 626 (quoting *In re Discipline of Hopewell*, 507 N.W.2d 911, 918 (S.D. 1993)). In determining an appropriate sanction, the Court considers the following factors: "(1) 'the duty violated'; (2) 'the lawyer's mental state'; (3) 'the actual or potential injury caused by the lawyer's misconduct'; and (4) 'the existence of aggravating or mitigating factors.'" *Light*, 2000 S.D. 100, ¶ 13, 615 N.W.2d at 168 (citing A.B.A. Standards for Imposing Lawyer Sanctions r. 3.0).

[¶58.]     The Court in *Mines*, 2000 S.D. 89, ¶ 17, 612 N.W.2d at 627, stated that in "determining the appropriate sanction to impose, we review the totality of the

attorney/client relationship and evaluate any aggravating or mitigating factors."

Aggravating factors include:

> (a) prior disciplinary offenses,
> (*b) dishonest or selfish motive*,
> *(c) a pattern of misconduct,*
> *(d) multiple offenses*,
> (e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency,
> (f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process,
> *(g) refusal to acknowledge wrongful nature of conduct*,
> (h) vulnerability of victim,
> (i) substantial experience in the practice of law, and
> (j) indifference to making restitution.

*Id.* (emphasis added) (quoting *Claggett*, 1996 S.D. 21, ¶ 16, 544 N.W.2d at 881)

(citing A.B.A. Standards for Imposing Lawyer Sanctions r. 9.22). The mitigating

factors include:

> (*a) absence of a prior disciplinary record*,
> (b) absence of a dishonest or selfish motive,
> (c) personal or emotional problems,
> (d) timely good faith effort to make restitution or to rectify consequences of misconduct,
> (e) full and free disclosure to Disciplinary Board or cooperative attitude toward proceedings,
> *(f) inexperience in the practice of law*,
> (g) character or reputation,
> (h) physical or mental disability or impairment,
> (i) delay in disciplinary proceedings,
> (j) interim rehabilitation,
> (k) imposition of other penalties or sanctions,
> (*l*) remorse, and
> (m) remoteness of prior offenses.

*Id.* (emphasis added) (citing A.B.A. Standards for Imposing Lawyer Sanctions r.

9.32).

[¶59.]     As we consider the spectrum of these factors, we start with the unprofessional conduct itself.  Volesky violated several Rules of Professional Conduct, involving at least three categories of misconduct—trust account violations, the continued assertion of frivolous claims, and a claim impugning the integrity of the judiciary.  While Volesky's mishandling of his trust account may be attributable to inexperience, lack of mentoring, and/or negligence, his repeated assertion of frivolous and unfounded claims against the judiciary was intentional.[5]

[¶60.]     Volesky's misconduct also caused actual injury to the legal system, the named parties, and his client.  Healy paid Volesky substantial legal fees to file multiple frivolous lawsuits and Healy has been ordered to pay thousands of dollars in sanctions and attorney fees for the pursuit of these claims.  Additionally, the parties sued in these actions incurred the time, expense, and annoyance in defending these claims.  Finally, Volesky's conduct unnecessarily burdened the courts handling busy dockets with legitimate claims.

---

5.     The court in *Hall* concluded a three-month suspension of the attorney's license to practice law was warranted for similar misconduct, noting the attorney "violated duties to his client, to the public, to the legal system, and to the profession." *Hall*, 765 S.E.2d at 200–01.  The court stated, "Dissatisfaction with adverse rulings, however, does not justify unwarranted attacks upon the credibility and personal values of the adjudicatory officer.  Such irresponsible behavior is injurious to the client's interests and to the attorney's obligation to the legal system." *Id.* at 200.  The court in *Hall* also concluded that the attorney "acted intentionally and knowingly; his violations were made in writing after deliberation." *Id.*  The court further noted the repetitious nature of the violations and that "[r]eckless statements regarding the integrity of a presiding judicial officer . . . serve to significantly undermine the integrity and public confidence in the administration of justice . . . [and] diminish the public's confidence in a fair and impartial administration of justice." *Id.*

#30736

[¶61.] Apart from the conduct in this case, Volesky has practiced law for a relatively short period of time—six years. And at the time he began representing Healy, Volesky had been in practice for less than two years. Volesky has an active practice and has served as both a city attorney and tribal judge, in addition to his private practice. He has not been the subject of any other disciplinary actions, and the conduct, aside from the trust account violations, is isolated to one client, whom the Referee accurately characterized as "litigious and particularly difficult." Further, although Judge Smith sanctioned both Volesky and Healy, Judge Smith has indicated that Volesky continues to appear before him and that notwithstanding his representation of Healy, Volesky is a good attorney.

[¶62.] Perhaps most concerning, Volesky has refused to admit that he violated *any* of the Rules of Professional Conduct. These denials stand in the face of an implicit acknowledgment by Volesky that he was incorrectly managing his trust account, the imposition of sanctions by more than one court for filing frivolous proceedings, and Volesky's own acknowledgment that there was no factual basis to support his claim that the Court fabricated evidence. While Volesky stood before the Court and stated that he had great respect for this Court and the court system, his misconduct and resolute refusal to acknowledge his misconduct says otherwise. And this matters in terms of this Court's obligation to protect the public from further unethical or incompetent activities and in preserving the image and integrity of the legal profession. As an officer of the court, Volesky is oath bound to "maintain the respect due to courts of justice and judicial officers." If Volesky does not understand or is unwilling to maintain such respect and acknowledge the lines

of professional responsibility, there is a greater "likelihood of repeated instances of similar misconduct." *Laprath*, 2003 S.D. 114, ¶ 77, 670 N.W.2d at 64 (citation omitted).

[¶63.]     Nonetheless, we conclude from the entirety of the record that Volesky will be able to conform his conduct to the Rules of Professional Conduct moving forward, particularly if this Court imposes a period of probation and mentoring. Volesky was a relatively new lawyer who did not have a regular mentor when he began representing Healy. Volesky has also not had any other reported instances of unprofessional conduct before these proceedings. Further, despite his denial of a rules violation relating to the handling of his law firm trust account, Volesky immediately changed his handling of the account to comply with the Rules.

[¶64.]     Finally, after weighing the serious and intentional conduct by Volesky, the recommendations of the Board, the Referee, and the entirety of the record, we conclude that the considerations of maintaining the integrity of the profession and deterring similar conduct by other lawyers require a significant suspension. The Court hereby suspends Volesky's license to practice law in South Dakota for a period of 90 days, with a probationary period of two years upon reinstatement. The suspension shall commence on the date of entry of the order of suspension, which shall follow this opinion.

[¶65.]     During the probationary period, Volesky must meet quarterly with a mentor attorney, approved by the Board, who is able to provide general guidance and assistance to Volesky. Volesky must provide his mentor attorney with copies of any civil complaints filed in state and federal courts; provide a quarterly update to

the mentor on the progress of such civil litigation; comply with any other conditions required by the Board; and provide the Board with access to his trust account records as requested. Pursuant to SDCL 16-19-70.4, Volesky shall reimburse the State Bar of South Dakota for all costs and expenses related to these proceedings and must pay the sanction issued against him by Judge Smith, both of which shall be paid prior to his reinstatement to practice law in South Dakota.

[¶66.]        KERN, DEVANEY, and MYREN, Justices, concur.

[¶67.]        SALTER, Justice, concurs in part and dissents in part.

SALTER, Justice (concurring in part, dissenting in part).

[¶68.]        In his opening remarks at his disciplinary hearing, Tucker Volesky said he was "sorry to be here." This statement and others like it were intoned solemnly and softly, but carefully curated to admit to absolutely nothing. I've struggled to reach any conclusion other than Volesky is only sorry that he's facing disciplinary action.

[¶69.]        Volesky accused a court—it doesn't matter which one—of manufacturing evidence *in a deliberate effort to harm a party*. By his own admission, he lacked a factual basis for what was offered as a clumsy, short-sighted expedient to stave off dismissal in the § 1983 case. And yet, Volesky steadfastly maintains that his court-manufacturing-evidence allegation was a "plausible" theory. So, when he professes his "respect" for this Court while apparently still believing it to be corrupt, his words fall resoundingly flat.

[¶70.]        The Court expresses a similar view and metes out what it considers to be an appropriate measure of discipline. But, in my view, the contradiction of

Volesky's position is so palpable, his remarks so half-hearted, and his lack of accountability so titanic that I simply cannot justify his reinstatement to practice after his 90-day suspension.

[¶71.] Volesky's relative youth and inexperience may well help explain his transgressions, as the Court suggests, but not his failure to accept *any* responsibility. Indeed, if Volesky had sincerely acknowledged his errors, or would, it would be easy to see a clear path forward for him as a practicing member of the Bar.

[¶72.] But he didn't, and won't. And so, we face the stark question of whether an unrepentant lawyer who is willing to make a baseless allegation that a court is corrupt in order to obtain a litigation advantage should have a license to practice law. The answer, in my view, is no, and I don't think it's a close call. I would enter an order disbarring him from the practice of law. *See Application of Widdison*, 539 N.W.2d 671, 675 (S.D. 1995) ("[T]he right to practice law is not in any proper sense of the word a *right* at all, but rather a matter of license and high privilege." (emphasis added) (citation modified)).

[¶73.] The principal virtue of the Court's disposition is that it reflects a degree of mercy, which we all surely need. But, in the end, I'm not sure how earnestly Volesky is seeking it.